885 P.2d 123

**John Scott CALLENDER and Marilyn Wolfson, Plaintiffs–Appellants,**

v.

**MCO PROPERTIES, a Delaware corporation; Ray and Marie Totah, individually and doing business as Crazy Horse Campground, Defendants–Appellees.**

**No. 1 CA–CV 92–0002.**

Court of Appeals of Arizona, Division 1, Department B.

May 10, 1994.

Review Denied Dec. 20, 1994.

See also, 179 Ariz. 557, 880 P.2d 1103.

Begam, Lewis, Marks, Wolfe & Dasse, P.A. by Elliot G. Wolfe, Cora C. Perez, Phoenix, for plaintiffs-appellants.

Coben & Ryan by Stephen C. Ryan, Scottsdale, and Beer & Toone by Christian K.G. Henrichsen, Phoenix, for defendant-appellee MCO Properties.

Michael W. Herzog, Phoenix, for defendants-appellees Totah dba Crazy Horse Campground.

## OPINION

CONTRERAS, Judge.

The questions presented in this appeal are whether the trial court correctly (1) granted summary judgment in favor of a party with the status of a landlord, finding that it was not liable for the injuries to an allegedly intoxicated customer to whom the landlord's tenant sold liquor and (2) entered judgment for possessors of premises and their landlord after finding neither had a duty of care to an intoxicated person injured in the lake adjacent to their premises. On both issues, we affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

On March 26, 1988, appellant John Scott Callender was boating with friends and acquaintances on Lake Havasu.[1] While Callender allegedly was already intoxicated, he purchased alcoholic beverages from the Nautical Inn Resort at Lake Havasu. After Callender and his companions consumed the alcohol, they steered their boat toward the beach at the Crazy Horse Campground. Two women occupants of the boat got out to retrieve an inflatable raft they had left at the beach. The young women attempted to row the raft out into the water. When Callender saw that they were having difficulty, he dived from the boat into the water to assist them. During the dive, however, he struck his head on the bottom of the lake, broke his neck, and was rendered a quadriplegic.

At the time of Callender's accident, the State of Arizona owned the land along the Lake Havasu shore where both the Nautical Inn and the Crazy Horse Campground were

1. The facts surrounding Callender's injury are more fully developed in *Callender v. Transpacific Hotel Corp.*, 179 Ariz. 557, 880 P.2d 1103 (1993). There, Division 2 held that the Nautical Inn's sale of an 80–ounce bucket of Mai Tais to Callender and his friends did not violate A.R.S. section 4–244(24) and thus that the trial court did not err in refusing to give a negligence *per se* instruction based on that statute.

located. The federal government owned and controlled the lake itself. The State leased the land, rent-free, to the City of Lake Havasu, which, in turn, subleased the land to appellee MCO Properties, Inc. ("MCO") under a concession agreement. Transpacific Hotel Corporation, under subconcession arrangements with MCO, operated the Nautical Inn on the property. Appellees Ray and Marie Totah, under subconcession arrangements with MCO, operated the Crazy Horse Campground.

Callender and his mother, Marilyn Wolfson ("Callender"), filed a civil action against the State of Arizona, Lake Havasu City, MCO, Transpacific Hotel Corporation dba the Nautical Inn, and Ray and Marie Totah, individually and doing business as the Crazy Horse Campground. Callender alleged that the defendants (1) negligently furnished or failed to prevent service of alcoholic beverages to him when he was already intoxicated and (2) failed to adequately warn that it was unsafe to dive in the water near the Crazy Horse Campground.

The State filed a motion to dismiss the dram shop claims; the Totahs and Lake Havasu City joined in the motion. They argued that under Arizona law, dram shop liability is limited to the licensed seller of the alcoholic beverage and its employees and that no common law dram shop duty extended to lessors or nonlicensed owners if they had not actually furnished the alcoholic beverages. These defendants further asserted that Arizona statutes expressly imposed common law dram shop liability only on liquor licensees.

In response, Callender argued that under Arizona common law, the duty of reasonable care was not limited to liquor license holders but applied to all *suppliers* of liquor. For support, he cited Ariz.Rev.Stat.Ann. ("A.R.S.") section 4–244 which extended liability for furnishing alcohol to a licensee "or other person." Callender argued that the only "other person" whose liability was limited by law was the social host under A.R.S. section 4–301. He thus contended that a "controlling person," such as a lessor who had profited from the sale of alcohol and who had reserved some measure of control over its lessee holding a liquor license, could be

liable for the lessee's negligent service of alcohol to an intoxicated person.

The trial court granted the motion to dismiss as to the State, Lake Havasu City, and the Totahs. MCO subsequently filed a motion for summary judgment on the dram shop claims, which the trial court granted. In granting the motion, the trial court found that MCO was "neither a licensee as defined in A.R.S. § 4–101(19) nor subject to liability under A.R.S. § 4–311 and § 4–301. Defendant MCO Properties also is not a supplier of liquor under common law liability of suppliers of liquor."

The Totahs moved for summary judgment on the remaining claims against them, arguing that no relationship existed between them and Callender from which a duty of care arose. They pointed out that Callender's accident occurred between twenty and fifty feet offshore from the campground premises, Callender had not been a guest of the campground, nor had he ever been on the premises prior to the accident. Further, they asserted that the boat had neither been obtained from nor docked at the campground. Finally, they argued that the lake's waters and subsurface were owned by the United States Department of the Interior and that Crazy Horse had no leasehold or other legal interest in those waters. The Totahs thus argued that they had no duty to Callender.

Callender responded that the Totahs owed a duty of reasonable care to him, including a duty to warn of the danger of diving into the water in the vicinity of its beach. He argued that because the Totahs reasonably could foresee that patrons of the campground and non-patrons in the company of patrons would approach the Crazy Horse beach by boat and might dive from the boats, the Totahs had a duty to act reasonably to warn people of the risk of diving.

The State, Lake Havasu City and MCO joined in the Totah's motion for summary judgment. The trial court granted the motion as to those parties and entered separate final judgments in favor of the Totahs, the State, Lake Havasu City, and MCO. Callender timely appealed from the four judgments

but later dismissed his appeal as to Lake Havasu City and the State. Only MCO and the Totahs remain as appellees.

In the discussion that follows, we respond to MCO's argument that it is immune from liability as a nonlicensee under A.R.S. section 4–301 and to Callender's claim that MCO breached a common law and statutory duty to prevent sale of alcohol to an intoxicated person. Callender also claims that A.R.S. section 4–301, which grants immunity to nonlicensees, is unconstitutional because it abrogates the common law right to recover for injuries guaranteed by article 18, section 6 of our constitution. Finally, we address Callender's claim that the trial court erred in granting summary judgment to both the Totahs and MCO under Callender's claim of premises liability.

## DISCUSSION

### A. Standard of Review

■ A motion for summary judgment "should be granted if the facts produced in support of the claim ... have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Even viewing the evidence in the light most favorable to Callender as the party opposing the motion, *Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990), we conclude that the trial court did not err in granting the motions in favor of MCO and the Totahs.

### B. Dram Shop Liability of MCO

Callender's first liability theory is that MCO's retained rights of inspection and control over the Nautical Inn premises in the subconcession agreement and its right to share in the Nautical Inn's revenues from

alcohol sales created a common law duty in MCO to prohibit the unreasonable and dangerous sale of alcohol by the inn. According to Callender, in failing to prevent the sale of alcohol to him when he was already intoxicated, MCO breached this duty.

Callender relies upon *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983), and *Brannigan v. Raybuck,* 136 Ariz. 513, 667 P.2d 213 (1983), both of which pre-dated enactment of A.R.S. sections 4–301[2] and 4–311 and 4–312.[3] He contends that our supreme court recognized a common law basis for imposing liability on liquor licensees for furnishing alcoholic beverages to minors or intoxicated persons who in turn injured third persons. These decisions, he maintains, allow an injured person to sue a party, like MCO, that both profited from the sale of alcohol and retained the right to control its manner of service, even if that party was not the holder of the liquor license.

MCO argues that it cannot be liable to Callender because without ownership or possession of the premises of the Nautical Inn, it is protected from liability by A.R.S. section 4–301.[4] Callender, on the other hand, contends that section 4–301 applies only to social hosts and not to persons or entities who directly profit from alcohol sales and who are "controlling person[s]" under A.R.S. section 4–101(7).

■ Based on the decision of our supreme court in *Hernandez v. Arizona Board of Regents,* 177 Ariz. 244, 866 P.2d 1330 (1994), we agree with Callender that section 4–301 simply does not apply to MCO and does not grant it immunity. Thus, we.need not address Callender's argument that section 4–301 is unconstitutional.

In *Hernandez,* the court considered the relationship between A.R.S. sections 4–301,

---

2. 1985 Ariz.Sess.Laws 908–09.

3. 1986 Ariz.Sess.Laws 1160–61.

4. A.R.S. section 4–301 (1989) provides:
    A person other than a licensee or an employee of a licensee acting during the employee's work-

ing hours or in connection with such employment is not liable in damages to any person who is injured, or to the survivors of any person killed, or for damage to property, which is alleged to have been caused in whole or in part by reason of the furnishing or serving of spirituous liquor to a person of the legal drinking age.

4–311 [5] and 4–312(B) [6] in determining whether a nonlicensee who negligently furnished alcohol to an underaged person could be liable for damages to a third person caused by the underaged drinker. The court concluded from the headings of these statutes that the legislature intended that section 4–301 govern the liability of nonlicensees for non-sale transactions and that sections 4–311 and 4–312 govern liability stemming from alcohol sales by a licensee. *Id.* at 1337–1338.

■ The court also concluded from the legislative history that by including the words "a person, firm, or corporation" in section 4–312(B), the legislature intended to protect persons associated with licensees from liability.

> [T]he most plausible interpretation of § 4–312(B) is that the immunity it grants applies solely to liquor licensees and their associates. In the statute, the word "person" must refer to a licensee's agent or employee, while *"firm or corporation" refers to any entity associated with the licensee, such as a partner, landlord,* subsidiary corporation, or the like. The most reasonable construction is that by enacting § 4–312(B), the legislature protected only licensees and those associated with a licensee's permitted activities from personal liability, "subject to" the common-law liability expressed in *Ontiveros* and *Brannigan* and codified in § 4–311.

*Id.* 177 Ariz. at 252, 866 P.2d at 1338 (emphasis added).

Although the relationship between MCO and the Nautical Inn is defined by a subconcession agreement rather than by a lease, their relationship is comparable to that of a landlord and tenant. Therefore, under the reasoning adopted in *Hernandez,* MCO is an associate of the liquor licensee, the Nautical Inn, and is entitled to the protection of section 4–312(B).

■ Pursuant to section 4–312(B), a person, firm, corporation or licensee is not liable to a person injured allegedly as the result of the "sale, furnishing, or serving" of liquor except as provided in section 4–311. Section 4–311(A) provides that a licensee is liable for personal injuries if a court or jury finds that the licensee sold liquor to a person who was obviously intoxicated or to a person under the legal drinking age, the purchaser consumed the liquor, and the consumption of the liquor was a proximate cause of the injury.

Callender alleged that the Nautical Inn sold liquor to him when he was obviously intoxicated. Nevertheless, even if MCO is considered to be an associate of the Nautical Inn, we do not believe that section 4–311 applies to MCO.

■ Both decisions relied upon by Callender as representative of the Arizona common law, as well as the later adopted statutes, clearly impose dram shop liability on licensees who *sell, furnish, supply* or *serve* liquor to an intoxicated person or a person under the legal drinking age. *Ontiveros* states that licensees "may be held liable when they *sell* liquor to an intoxicated patron or customer under circumstances where the licensee or his employees know or should know that such conduct creates an unreasonable risk of harm to others." 136 Ariz. at 513, 667 P.2d at 213 (emphasis added). Similarly, in *Brannigan,* "a *supplier* of liquor is under a common law duty of reasonable care in *furnishing* liquor" to persons either under the drinking age and/or already intoxicated. 136 Ariz. at 516, 667 P.2d at 216 (emphasis added).

**5.** Section 4–311(A) (1989) reads:

A. A licensee is liable for property damage and personal injuries or is liable to a person who may bring an action for wrongful death pursuant to § 12–612 if a court or jury finds the following:

1. The licensee sold spirituous liquor either to a purchaser who was obviously intoxicated, or to a purchaser under the legal drinking age without requesting identification containing proof of age or with knowledge that the person was under the legal drinking age, and

2. The purchaser consumed the spirituous liquor sold by the licensee, and

3. The consumption of spirituous liquor was a proximate cause of the injury, death or property damage.

**6.** Section 4–312(B) (1989) provides:

B. Subject to the provisions of subsection A of this section and except as provided in § 4–311, a person, firm, corporation or licensee is not liable in damages to any person who is injured, or to the survivors of any person killed, or for damage to property which is alleged to have been caused in whole or in part by reason of the sale, furnishing or serving of a spirituous liquor.

Parallel language in our statutes leads us to conclude that MCO's position as essentially the landlord to the Nautical Inn is not sufficient to impose liability on MCO for the inn's sale of alcohol to Callender. Under A.R.S. section 4–244(14), it is unlawful for "a licensee or other person to *serve, sell* or *furnish* spirituous liquor to an intoxicated or disorderly person." (Emphasis added.) Section 4–311(A) renders a licensee liable if the "licensee *sold* spirituous liquor" to an intoxicated person or an underaged purchaser. (Emphasis added.) Section 4–312(B) also uses the phrase "by reason of the *sale, furnishing* or *serving* of spirituous liquor" in immunizing licensees from liability. (Emphasis added.) Section 4–301 limits the liability of nonlicensees for the *furnishing* or *serving* of spirituous liquor. (Emphasis added.)

Callender contends, nevertheless, that A.R.S. section 4–244(14) extends liability to "a licensee *or other person* " (emphasis added) who services, sells or furnishes liquor to an intoxicated person. "Person" is defined by A.R.S. section 4–101(22) to include a "partnership, association, company or corporation." Callender thus argues that reasonable jurors could have found that, although MCO was not the licensee, it was an "other person" and statutorily liable for the negligent or improper service of alcohol to Callender.

Callender cites no authority either in our common law or statutory scheme for imposing liability on a person, firm or corporation other than one who actually serves, sells, furnishes or supplies the liquor. Only those who actually dispense liquor are in a position to gauge the age or state of intoxication of a customer. Extending liability to one who is merely associated with a licensee but who does not control the sale, service, furnishing or supplying of alcohol by the licensee is unwarranted. Therefore, we conclude that dram shop liability does not apply to MCO because it did not actually perform or control the service, sale, or supplying of liquor to an underaged or obviously intoxicated person.

Our conclusion is in accord with other jurisdictions that have considered similar issues. See *Martin v. Watts*, 513 So.2d 958 (Ala.

1987) (no cause of action against owner of cabin where party occurred who did not provide beer consumed by minors); *Coulter v. Superior Court*, 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978) (social host who furnished liquor to intoxicated person may be liable for injuries to third person but owners of apartment building who permitted person to drink on the premises not liable); *Wright v. Sunset Recreation, Inc.*, 91 A.D.2d 701, 457 N.Y.S.2d 606 (N.Y.App.Div.1982) (landlord not liable for sale of alcohol by tenant even though landlord and tenant shared the premises); *Stein v. Beta Rho Alumni Ass'n, Inc.*, 49 Or.App. 965, 621 P.2d 632 (1980) (owner/landlord of fraternity house not liable for injuries caused by minors intoxicated at fraternity party); *Alumni Ass'n, Delta Zeta Zeta of Lambda Chi Fraternity v. Sullivan*, 369 Pa.Super. 596, 535 A.2d 1095 (1987) (no viable cause of action against national fraternity and university, even if aware that alcohol was served to minors, if did not furnish it); *McCrery v. Scioli*, 336 Pa.Super. 455, 485 A.2d 1170 (1984) (corporate owner of realty on which restaurant located not liable for restaurant's sale of alcohol to person who injured plaintiff).

■ Callender argues, however, that this case is distinguishable because MCO had the right to control the operation of the Nautical Inn and profited from the sale of liquor. We do not agree. The contract provision Callender cites gives MCO "the right at any time to enter upon any areas assigned hereunder for any purpose that [MCO] . . . may deem reasonably necessary for the administration of the area, but not so as to destroy or unreasonably interfere with [the Nautical Inn's] use of the areas or the improvements thereon." This provision does not give MCO the right or duty to control or supervise the business activities of the Nautical Inn nor its sale of alcoholic beverages, and no evidence in the record demonstrates that MCO ever attempted to do so. Likewise, no evidence shows that MCO's right to receive four percent of the Nautical Inn's gross receipts was anything but the equivalent of rent or that it imposed on MCO any duty to supervise the Nautical Inn's activities.

We reject Callender's final argument that MCO contractually assumed the legal responsibilities of the Nautical Inn with respect to alcohol service. He cites *Professional Sports, Inc. v. Gillette Security, Inc.,* 159 Ariz. 218, 766 P.2d 91 (App.1988), to support his argument that a party may assume the responsibilities of the alcohol server and thus be liable for improper service. In *Gillette,* a security company contracted with a baseball team to supply guards to patrol the baseball stadium and to monitor alcoholic beverage service to deter underaged patrons from buying and consuming alcohol. The court held that because the security company had assumed this duty by contract, it had a duty to prevent minors from consuming alcohol at baseball games. *Id.* at 220, 766 P.2d at 92. Here, however, MCO did not contractually assume any duty to police the sales to or consumption of alcohol by Nautical Inn customers.

Because MCO neither took part in nor had an obligation to supervise the dispensing of liquor by the subconcessionaire, it is not liable for Callender's injuries. Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of MCO on Callender's dram shop claim against it.

### C. Premises Liability of MCO and the Totahs

Callender argues that the trial court erred in finding that neither MCO nor the Totahs owed Callender a common law duty of care. He contends that even though his accident did not occur on the campground premises operated by the Totahs under the subconcession agreement with MCO, MCO and the Totahs had a duty to warn of unsafe diving conditions in the lake adjacent to the campground. As a public invitee and foreseeable user of the campground and water adjacent to it, he asserts that MCO and the Totahs owed him the same duty of care when he dived from the boat as they would have owed him had he dived from the shore at the campground. In addition, Callender argues that, under the terms of their contract with the State, MCO and the Totahs assumed a duty of care to the public.

In order to hold either MCO or the Totahs liable in negligence, Callender must establish that the defendants had a duty or obligation recognized by law that required them to conform to a standard of conduct to protect others from unreasonable risks. *Ontiveros,* 136 Ariz. at 504, 667 P.2d at 204. Whether the defendants owed a duty of care to the plaintiff is a question of law for the court. *Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 354, 706 P.2d 364 (1985); *Bellezzo v. State,* 174 Ariz. 548, 550, 851 P.2d 847, 849 (App.1992). The court determines "whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz,* 146 Ariz. at 356, 706 P.2d at 368. No duty exists unless the relations between the parties "impose upon one a legal obligation for the benefit of the other." *Ontiveros,* 136 Ariz. at 508, 667 P.2d at 208.

Callender claims that his status as a "public invitee" created a relationship that obligated MCO and the Totahs to use care to prevent his injuries. A public invitee is defined as "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *Nicoletti v. Westcor, Inc.,* 131 Ariz. 140, 143, 639 P.2d 330, 333 (1982), *citing* Restatement (Second) of Torts § 332(2) (1965). We agree that Callender was a public invitee with respect to the lake, which was owned by the federal government and was open to the public.

Callender, however, seeks recovery from the sublessees of the land adjacent to the lake, not the lake owner. The campground was a business enterprise. A business invitee "is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id. citing* Restatement (Second) of Torts § 332(3) (1965). Callender was not an invitee of the Totahs. He did not enter the campground before the accident nor did he use any of the campground services or its dock. He was not attempting to enter the campground at the time of the injury. There simply was no relationship between Callen-

der and the campground that would have imposed a duty of care on MCO and the Totahs for his benefit.

Callender attempts to analogize his situation to that in *Markowitz*. Markowitz was a public invitee on federal land leased to the State when he was injured by diving from a cliff into Lake Havasu. The court held that the State had a duty of reasonable care to citizens who were on its land at its invitation. 146 Ariz. at 357, 706 P.2d at 369. Callender, on the other hand, had never been on the campground premises operated by MCO and the Totahs; his injury occurred on a lake owned by the federal government. Thus, *Markowitz* does not support Callender's argument that MCO and the Totahs owed him a duty.

■ Even if no common law duty exists, Callender argues that under their contract with the State, MCO and the Totahs assumed a duty of care to the Arizona public. This may be true as to the operation of the campground, but Callender points to nothing in the lease and concession documents that imposes a duty on these parties to inspect the lake itself or to warn the public of dangerous conditions. He argues that by agreeing to "permit free and ready access to the lease premises by the public," MCO and the Totahs assumed a duty to protect against the type of injury he suffered. This provision does not advance Callender's argument because he was not attempting to gain access to the campground, and he has not alleged that any condition under the appellee's control prevented access to the campground.

Callender relies on *Udy v. Calvary Corp.*, 162 Ariz. 7, 780 P.2d 1055 (App.1989), and *Baroco v. Araserv, Inc.*, 621 F.2d 189 (5th Cir.1980), to support his assertion that MCO and the Totahs are liable for his injuries. In *Udy*, however, a landlord-tenant relationship existed between the plaintiffs and the defendant. Clearly, the defendant had a duty of care with respect to the tenants. In *Baroco*, the defendant operated a beach and contracted to provide lifeguards and lifesaving equipment, which it did not do. The court found the defendant liable for a drowning because it had breached its contractual duty to provide safety measures to users of its beach.

Unlike *Udy* and *Baroco*, in this case, no relationship existed between Callender and the appellees that would impose on them a duty of care. Similarly, neither MCO nor the Totahs assumed a contractual duty to the users of the lake in the vicinity of the campground.

### CONCLUSION

The trial court properly granted summary judgment against Callender on his dram shop claims against MCO. It also correctly granted summary judgment for MCO and the Totahs after finding they had no duty to warn Callender of the dangers of diving in waters offshore from the campground. We therefore affirm the trial court judgments in favor of MCO and the Totahs.

WEISBERG, P.J., and TOCI, J., concur.