961 P.2d 1070

Helen L. DE LA CRUZ, individually and on behalf of the surviving children of Rodolfo D. de la Cruz, Plaintiff/Appellee,

v.

STATE of Arizona, a body politic; Industrial Commission of Arizona; Division of Occupational Health and Safety, a body politic, Defendants/Appellants.

No. 2 CA–CV 97–0056.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 24, 1998.

Review Denied Sept. 10, 1998.

Aboud & Aboud, P.C. by Michael J. Aboud, Tucson, for Plaintiff/Appellee.

Grant Woods, Attorney General by Thomas J. Dennis and Charles R. Pyle, Tucson, for Defendants/Appellants.

## OPINION

FLÓREZ, Presiding Judge.

¶1 Appellants, the State of Arizona, the Industrial Commission, and its Division of Occupational Safety and Health (ADOSH) (collectively, the State), appeal from an adverse jury verdict in a wrongful death action appellee Helen de la Cruz brought following the death of her husband, Rodolfo, in a construction accident. The State claims the trial court erred in denying its motion for a directed verdict, arguing it owed no duty to Rodolfo.[1] Because the existence of a duty is a legal question, *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 706 P.2d 364 (1985), we review the trial court's ruling de novo. *Inch v. McPherson,* 176 Ariz. 132, 859 P.2d 755 (App.1992). We affirm, but on a different basis than that stated by the trial court. *Glaze v. Marcus,* 151 Ariz. 538, 729 P.2d 342 (App.1986).

### Facts and Procedural Background

¶2 Rodolfo was killed when a wall of dirt collapsed at the construction site where he was working. ADOSH representatives had conducted "spot checks" and comprehensive inspections at the site on several prior occasions. According to the ADOSH inspector's testimony, a comprehensive inspection involves checking the whole site, including areas where employees are working at the time of the inspection and where the inspector anticipates work will be done.

¶3 On February 11, 1993, an ADOSH inspector conducted a comprehensive inspection of the site. He visually checked the embankment system that reinforced the wall, and when he asked the general contractor about the system, he was told it was an "engineered system." The inspector testified that an engineered system bears an engi-

neer's seal of approval. The general contractor also told the inspector that the system engineers "were available at all times and they were in and out of the site of the excavation also, checkin' it out." The inspector did not further investigate the system or test soil types in the area, the depth of the system, the type of grouting used, or the position of the rods used. Nor did he walk around the top surface perimeter of the site or notice particular vibrations while he viewed the system from its base. The inspector also did not use an ADOSH checklist, which would have directed him to conduct certain investigations, or examine the ADOSH on-site file, which would have directed his attention to concerns about the excavations previous inspectors had addressed. The inspector issued only one citation for a frayed electrical cord. After Rodolfo was killed on March 12, 1993, however, ADOSH issued numerous citations, including one for improper installation of the embankment system.

¶4 After appellee filed her wrongful death action,[2] the State moved for summary judgment, arguing that no duty existed upon which a claim for wrongful death could be based. Although the trial court found no duty existed under the ADOSH statutes, A.R.S. §§ 23–401 through 23–433, it found one existed under the Restatement (Second) of Torts § 324A (1965) and denied the State's motion. At the close of appellee's evidence, the State argued that the necessary elements of § 324A had not been satisfied and moved for a directed verdict, which the court denied. The trial court instructed the jury on the definitions of fault, negligence, and causation, in addition to instructing it on the three prongs of § 324A. The jury found the ADOSH inspector failed to act with reasonable care and held the State liable for 15% of $1.5 million in damages. This appeal followed.

---

1. Although the denial of a motion for summary judgment is generally a nonappealable ruling, *Fleitz v. Van Westrienen,* 114 Ariz. 246, 560 P.2d 430 (App.1977), the State preserved its ground of appeal on the existence of a duty in its motion for directed verdict.

2. Appellee sued the property owners and contractors in a separate action, which the parties settled.

### Discussion

¶ 5 A cause of action for negligence exists only when a defendant breaches a legally imposed duty or obligation to protect foreseeable plaintiffs from harm. *Markowitz.* The relationship between individuals, not instances of conduct, creates "a legal obligation for the benefit of the other." *Id.* at 355, 706 P.2d at 367. The State argues it owed no duty whatsoever to de la Cruz. Though the trial court rejected that assertion and found a duty only under Restatement § 324A, appellee argues that the State also had a duty under the ADOSH statutes, specifically A.R.S. § 23–424. We are not bound by the trial court's interpretation of the statute and review the issue de novo. *Turf Paradise, Inc. v. Maricopa County*, 179 Ariz. 337, 878 P.2d 1375 (App.1994).

¶ 6 We interpret a statute so as to give effect to legislative intent, *Mail Boxes, Etc. v. Industrial Commission*, 181 Ariz. 119, 888 P.2d 777 (1995), looking to the language of the statute as "the most reliable indicator of legislative intent." *Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 592, 892 P.2d 1375, 1381 (App.1994). Section 23–424 provides:

Notwithstanding any other provision of the law to the contrary, neither the commission nor its authorized representative shall be subject to civil liability for any acts or omissions in the course of any inspection or investigation for the commission if he is acting in a reasonable manner, considering the activity in which he is engaged.

As we read it, the plain language of the statute protects the Industrial Commission and its authorized representative from civil liability where the representative, such as an ADOSH inspector, conducts an inspection in "a reasonable manner." Conversely, the statute subjects the inspector to civil liability when the inspector fails to conduct the inspection "in a reasonable manner."

¶ 7 To further assist in determining legislative intent, we also consider the statutory scheme of which § 23–424 is a part. *See Grant v. Board of Regents*, 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982) ("Statutory construction requires that the provisions of a statute be read and construed in context with the related provisions and in light of its place in the statutory scheme."). In enacting chapter 23, the legislature created a relationship between ADOSH and Arizona workers by declaring its intent to create safe workplaces for Arizona workers. "The legislature declares it to be its purpose and policy to assure so far as possible every working man, woman and child in the state safe and healthful working conditions and to preserve our human resources." 1972 Ariz. Sess. Laws, ch. 136, § 1. We believe that the duty to inspect with due care advances this legislative purpose by increasing the likelihood that unsafe working conditions will be discovered and corrected. ADOSH has the power to cite employers for violating occupational safety and health standards, require remedial measures, assess monetary penalties, or petition the superior court for orders restraining unsafe conditions or practices. A.R.S. §§ 23–417, 23–418, 23–419.

¶ 8 Moreover, the duty imposed by § 23–424 is consistent with *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 381 P.2d 107 (1963), and *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982), and the legislative purpose set forth in the immunity statute, A.R.S. § 12–820. In *Ryan*, our supreme court reiterated its decision in *Stone* that, when considering an immunity defense, "the rule is liability and immunity is the exception," *Ryan*, 134 Ariz. at 309, 656 P.2d at 598, *quoting Stone*, 93 Ariz. at 392, 381 P.2d at 112. After *Ryan*, the legislature enacted the immunity statutes at issue here, recognizing that "government should not have the duty to do everything that might be done," but nonetheless declaring it "to be the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state." 1984 Ariz. Sess. Laws, ch. 285, § 1. Section 23–424 imposes such liability upon the Industrial Commission. Although § 23–424 does not impose a duty to inspect, once ADOSH undertakes an inspection, the statute imposes a duty to conduct the inspection with reasonable care.[3]

---

3. Whether the source of the duty was the Restatement or the statute, the jury's role was the

¶ 9 The State contends that, even if § 23–424 imposes a duty on ADOSH to conduct inspections with due care, the State enjoys either absolute immunity under § 12–820.01(B)(3) or qualified immunity under § 12–820.02(A)(6). We disagree for several reasons. First, § 23–424 imposes the duty to conduct inspections with reasonable care "[n]otwithstanding any other provision to the contrary." This language, we believe, expressly rejects the immunity provided by either § 12–820.01(B)(3) or § 12–820.02(A)(6).

¶ 10 Second, neither provision applies here. Section 12–820.01(B)(3) grants absolute immunity to public entities determining fundamental governmental policy concerning "[t]he licensing and regulation of any profession or occupation." We reject the State's contention that an ADOSH inspection of the workplace somehow involves the licensing and regulation of a profession or occupation, especially when the State fails to identify the profession or occupation that ADOSH licenses or regulates. This case is unlike the case upon which the State relies, *Bird v. State,* 170 Ariz. 20, 821 P.2d 287 (App.1991), where Division One of this court concluded that the State Structural Pest Control Commission enjoyed absolute immunity under § 12–820.01(B)(3) for its decision to license the exterminating company that inadequately treated Bird's home for termites. In reaching this conclusion, the court noted that

> Chapter 22 of Title 32 provides for the establishment of the Structural Pest Control Commission. It further describes the procedure by which the Commission certifies and licenses individuals to lawfully apply pesticides and to engage in the business of structural pest control.

*Id.* at 24, 821 P.2d at 291. (Citations omitted).

¶ 11 In addition, the use of the word "and" in § 12–820.01(B)(3) manifests a legislative intent that absolute immunity be limited to governmental entities that both license *and* regulate professions or occupations. *See Alaface; see also State v. Johnson,* 171 Ariz.

same—to determine whether the State breached its duty to act reasonably under the circum-

39, 41, 827 P.2d 1134, 1136 (App.1992) (we presume the natural and obvious meaning of words unless stated otherwise). The conjunction between licensing and regulation requires the interpretation of the two words in combination, defeating the State's argument that they operate in the disjunctive.

¶ 12 Moreover, we find nothing in the ADOSH statutes granting it the authority to *license* any profession or occupation; the statutes establish standards for safe workplaces. *See Diaz v. Magma Copper Co.,* 190 Ariz. 544, 553, 950 P.2d 1165, 1174 (App. 1997) (mining statutes do not regulate or license mining as an occupation; they regulate the environment in which miners work). The profession or occupation that ADOSH generally affects is contracting, regulated and licensed by the Registrar of Contractors pursuant to §§ 32–1101 through 32–1170. Because we presume the legislature knew of these statutes when it enacted the ADOSH statutes, *see Daou v. Harris,* 139 Ariz. 353, 357, 678 P.2d 934, 938 (1984), we conclude the legislature intended the Registrar of Contractors, not ADOSH, to license and regulate contracting. ADOSH inspectors do not, therefore, enjoy absolute immunity for their inspections under § 12–820.01(B)(3).

¶ 13 We also reject the State's argument that the inspectors have qualified immunity under § 12–820.02(A)(6). This statute grants immunity, except for intentional acts and gross negligence, when a public entity fails "to discover violations of any provision of law *requiring* inspections of property other than property owned by the public entity in question." (Emphasis added.) Because the ADOSH statutes do not require inspections of construction sites, § 12–820.02(A)(6) is not implicated here.

¶ 14 In conclusion, we hold that § 23–424 subjects ADOSH inspectors to liability for inspections or investigations it conducts without due care under the circumstances and that the inspectors are not immune from such liability under §§ 12–820.01(B)(3) or 12–820.02(A)(6). Because the jury decided that the ADOSH inspector did not conduct the

stances. *See State v. Juengel,* 15 Ariz.App. 495, 489 P.2d 869 (1971).

inspection here in a reasonable manner, we affirm the judgment entered against the State.

DRUKE, C.J., and BRAMMER, J., concur.