IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

DEC 20 2007

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| MARIA HENNING and GLENDA HENNING, as guardians for KRISTOFER JOSEPH LANCASTER, and MARIA HENNING, individually as mother of Kristofer Joseph Lancaster, | ) ) ) ) ) ) | 2 CA-CV 2007-0109 DEPARTMENT B |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| MONTECINI HOSPITALITY, INC., dba FAMOUS SAM'S #1, | ) ) ) ) | |
| Defendant/Appellee. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20060192

Honorable Charles V. Harrington, Judge

AFFIRMED

---

Law Office of Elliot Glicksman, P.L.L.C.
  By Elliot Glicksman
Tucson
Attorney for Plaintiffs/Appellants

Schneider & Onofry, P.C.
  By Jon D. Schneider and Luane Rosen
Phoenix
Attorneys for Defendants/Appellees

---

E C K E R S T R O M, Presiding Judge.

¶1     This case arose from an automobile accident in which Kristofer Lancaster, son of appellant Maria Henning, was seriously injured while a passenger in a car driven by Steven Zenizo. Both Kristofer and Zenizo were intoxicated after drinking alcoholic beverages at a bar known as Famous Sam's, a franchise of Famous Sam's Inc. (FSI). On the night of the accident, the bar was owned by appellee Montecini Hospitality, Inc., but operated by Zimbow Enterprises, Inc., a company that was in the process of purchasing the bar.

¶2     Henning and her daughter, appellant Glenda Henning, as guardians for Kristofer, appeal from the trial court's grant of summary judgment in favor of Montecini on the Hennings' complaint. The complaint alleged Montecini was liable under dram shop laws and for negligently training its employees to serve alcohol to obviously intoxicated or underage persons. Because we agree with the trial court that Montecini no longer exercised sufficient control over the bar or its employees to owe any duty to Kristofer, we affirm the judgment.

¶3     When reviewing a case decided by summary judgment, we must view the facts in the light most favorable to the party adversely affected by the court's ruling. *Ontiveros v. Borak*, 136 Ariz. 500, 503, 667 P.2d 200, 203 (1983). After consuming alcoholic beverages at Famous Sam's on January 21, 2005, Zenizo drove his car into a tree. Although his passenger, Kristofer, was under the legal drinking age, he had also consumed alcohol at Famous Sam's.

¶4 About two months before the accident, Montecini and Zimbow had entered into a purchase agreement for the sale of the bar at issue, with the sale originally scheduled to close no later than December 31, 2004. On December 24, the parties signed an addendum to the purchase agreement that provided Zimbow would take possession of the bar five days later. The addendum stated that Zimbow "agrees to be responsible for all employees' salaries from December 29, 2004 . . . [and] to transfer all utilities into its name on the subject property as of December 29, 2004." It also provided that Zimbow would "be responsible for any [and] all Royalties due Famous Sam's commencing January 1, 2005." The Arizona Department of Liquor Licenses and Control issued Zimbow an interim liquor license for the bar on December 30, 2004.[1] Although the franchise transfer was supposed to be effective as of January 1, 2005, FSI did not ratify the transfer until February 3, 2005. And the sale of the business from Montecini to Zimbow did not close until May or June of that year. Thus, the January 2005 accident occurred after Zimbow took possession and assumed operation of the business but before ownership had fully passed from Montecini.

¶5 The Hennings sued Montecini, FSI, and Zimbow for negligence both under Arizona dram shop laws and in the hiring, training, and supervision of their employees. The Hennings dismissed their claims against Zimbow and FSI after reaching settlement agreements with those parties. Montecini moved for summary judgment, contending it had

---

[1]On the night in question, Zimbow held an interim liquor permit. It was not granted its permanent license until May 2005, but we find no relevant difference for purposes of this appeal. *See, e.g.*, Ariz. Admin. Code R19-1-101 (defining "Licensed" as having a "license or interim permit" issued by the Arizona Department of Liquor Licenses and Control); *see also* A.R.S. § 4-203.01 (interim permit rules).

no duty under the dram shop laws because it did not have possession and control of the bar nor did it employ any of the alcohol servers at the time of the accident. After originally denying the motion, the court reconsidered it and granted summary judgment in favor of Montecini on both claims, ultimately concluding Montecini owed no duty of care to Kristofer.

## DRAM SHOP LIABILITY

**¶6** The Hennings argue the trial court erred in so concluding. Duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). Arizona imposes a duty of care, both by statute and common law, on a "supplier of liquor" to refrain from serving alcoholic beverages to underage persons or those who are disorderly or obviously intoxicated. *Brannigan v. Raybuck*, 136 Ariz. 513, 516-17, 667 P.2d 213, 216-17 (1983); *Ontiveros*, 136 Ariz. at 510-11, 667 P.2d at 210-11; *see also* A.R.S. § 4-244 (9), (14). In a negligence action, "whether a duty exists[] is a matter of law for the court to decide." *Gipson v. Kasey*, 214 Ariz. 141, ¶ 9, 150 P.3d 228, 230 (2007). We review that legal question de novo. *De La Cruz v. State*, 192 Ariz. 122, ¶ 1, 961 P.2d 1070, 1071 (App. 1998).

**¶7** Notwithstanding the purchase agreement between Montecini and Zimbow, the Hennings maintain that Montecini owed a duty of care to Kristofer simply because it still owned the bar at the time of the accident. But we have previously declined to impose such

4

a duty on "one who is merely associated with a licensee but who does not control the sales, service, furnishing or supplying of alcohol by the licensee." *Callender v. MCO Properties*, 180 Ariz. 435, 441, 885 P.2d 123, 129 (App. 1994). In concluding that a lessee of government land owed no duty to a patron to whom a sublessee served alcohol, we observed: "Only those who actually dispense liquor are in a position to gauge the age or state of intoxication of a customer." *Id.* Here, Zimbow, not Montecini, held the liquor license and therefore clearly bore primary legal responsibility to control the sale of alcohol to patrons of Famous Sam's. Assuming *arguendo* this statutory responsibility of the licensee did not necessarily relieve a nonoperating owner of all potential liability arising from serving of alcohol at the owner's establishment,[2] the Hennings have presented no evidence suggesting that Montecini, in the capacity of owner, exercised any continuing control over the service of alcohol at the bar after Zimbow assumed operational responsibility pursuant to the purchase agreement.

¶8 The Hennings emphasize that Montecini continued to advise Zimbow regularly after Zimbow became responsible for operating the bar. And, as the Hennings observe, some of that guidance apparently related to the service of alcohol.[3] But the Hennings have provided no evidence from which a jury could infer that the terms of the purchase agreement

---

[2]*See Prof'l Sports, Inc. v. Gillette Sec., Inc.*, 159 Ariz. 218, 222, 766 P.2d 91, 95 (App. 1988) (finding nonlicensee security company had duty of care with regard to alcohol service arising from express contractual obligation to patrol ballpark for underage drinking).

[3]A representative of Zimbow testified that the discussion included "dealing with rowdy customers or cutting off customers."

required Zimbow to follow Montecini's advice. Under those circumstances, no jury could reasonably interpret such advice, however helpful, as evidence that Montecini continued to exercise control over serving alcohol at the bar. *Id.* (coupled with receipt of rent, contractual provision permitting landlord to enter premises for any reasonably necessary purpose not sufficient to give landlord "the right or duty to control or supervise the business activities . . . [or] sale of alcoholic beverages" of tenant who was selling alcohol).

¶9 Nor does the purchase agreement or its addendum give Montecini the express right to control or supervise Zimbow's operation of the business. To the contrary, the terms of the agreement—which shifted to Zimbow all continuing financial responsibility for the bar's operation as of December 29, 2004—suggest an implicit understanding between the parties that Zimbow acquired full functional control of the bar on that date.[4] The record demonstrates that Montecini's status as the named franchisee for the Famous Sam's bar had not yet passed to Zimbow at the time of the incident. Although that status could conceivably provide an incentive for Montecini to retain some control over the bar's operations,[5] the Hennings have provided no evidence demonstrating that Montecini was in

_____

[4]On the date of the accident, Montecini was still the named franchisee of FSI. As we have noted, the franchise transfer agreement stated the transfer was to take place on January 1, 2005, but it was not signed by FSI until February 3, 2005. The Hennings maintain that any effort to transfer the business before then was null and void under the franchise agreement. But they do not cite any authority for that proposition or articulate how Montecini's remaining the legal owner but not the operator of the franchise gave Montecini a right or duty to control the service of alcohol to patrons of the bar.

[5]A representative of FSI testified that FSI could hold Montecini, its franchisee, responsible for any liquor law violations even if Montecini no longer exercised operational control over the bar. During oral argument, the Hennings suggested that Montecini therefore

6

fact so motivated or took any actions, contractual or otherwise, to do so. In short, the Hennings have not shown Montecini had any residual right to supervise or control the business activities of Zimbow on the night of the accident.

¶10 The Hennings attempt to distinguish this case from the scenario presented in *Callender* on the ground that Montecini retained an ownership interest in the property while the relevant defendant in *Callender* was a mere lessee of the property in question. But the holding in *Callender*—that a duty under Arizona's dram shop laws does not arise from a mere interest in property in the absence of control over the dispensing of liquor—applies to an ownership interest no less than to other interests in property. *See* 180 Ariz. at 441, 885 P.2d at 129. In the analogous arena of premises liability, Arizona law makes clear that a duty of care arises not from mere ownership of property but, rather, from possession and control. *See Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 103-04, 800 P.2d 962, 969-70 (1990) (no liability for landowner not in control of premises; "it is the fact of possession that triggers the landowner's duty to his invitees").

¶11 The Hennings argue that, in any event, a bar owner's duty to exercise reasonable care in serving alcohol is nondelegable and that Montecini therefore cannot avoid liability by ceding control over the bar to Zimbow. To support this proposition, they rely on the general rule that a property owner or possessor has a nondelegable duty to keep his

possessed a duty of care arising solely from that contractual relationship between FSI and Montecini. But the Hennings did not advance this particular argument in their briefs. We therefore decline to address it. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977).

or her premises safe. *See id.*, 166 Ariz. at 101, 800 P.2d at 967. But, as demonstrated in *Callender*, this court has implicitly found that a lessor can delegate to a lessee the duty to exercise reasonable care in serving alcohol. *See* 180 Ariz. at 441, 885 P.2d at 129. We can conjure no logic for applying a different rule to the seller and purchaser of a business when the purchaser has taken possession and operational control.

¶12 The Hennings finally argue we can find a duty based on sound public policy, emphasizing "the injuries and deaths caused by alcohol related traffic accidents." They rely on *Gipson*, 214 Ariz. 141, ¶ 23, 150 P.3d at 232, for the proposition that we can impose a duty based solely on public policy. There, our supreme court found a duty of care based on Arizona statutes prohibiting the conduct at issue—distributing prescription drugs to those without a valid prescription. *Id.* ¶¶ 25-26; *see also Stanley v. McCarver*, 208 Ariz. 219, ¶¶ 6, 14, 92 P.3d 849, 851, 853 (2004) (finding, when statutes silent on issue, public policy supported recognizing duty of care even absent formal doctor-patient relationship).

¶13 In the statutes pertinent to this case, our legislature has expressed a similarly specific public-policy determination that drunk driving is a paramount concern and that liquor licensees should not serve alcohol to clearly impaired or underage patrons. *See* A.R.S. §§ 4-101 through 4-312. But, unlike other contexts in which our supreme court has found duties based on public-policy considerations, our legislature here has also significantly limited the liability of nonlicensees for serving alcohol. *See* §§ 4-301, 4-312(B); *see also Callender*, 180 Ariz. at 441, 885 P.2d at 129 (landowner "merely associated" with licensee has no duty of care in furnishing alcohol). We would exceed our

8

authority were we to substitute our own public-policy determinations for those of the legislature. *See Grand Canyon Trust v. Ariz. Corp. Comm'n*, 210 Ariz. 30, ¶ 35, 107 P.3d 356, 364 (App. 2005).

¶14 For the foregoing reasons, we conclude Montecini owed no duty of care with regard to the sale and service of alcohol at Famous Sam's on the night of Kristofer's accident. Therefore, the trial court did not err in granting summary judgment in favor of Montecini on that claim.

## NEGLIGENT TRAINING

¶15 The Hennings argue the trial court erred in granting summary judgment on their claim that Montecini "was negligent . . . in the hiring, training, and supervision of its employees concerning the lawful service of intoxicating beverages and concerning compliance with Arizona liquor laws."[6] We review de novo the trial court's grant of summary judgment. *State v. Mabery Ranch Co., L.L.C.*, 216 Ariz. 233, ¶ 23, 165 P.3d 211, 217 (App. 2007).

¶16 The trial court granted Montecini's motion on this issue because none of the bar employees who served alcohol on the night in question were still employed by Montecini. Most of the handful of Arizona cases that have recognized the tort of negligent hiring, training, or supervision have done so when the tortfeasor remains a current employee of the entity to be held liable. *See, e.g., Kuehn v. Stanley*, 208 Ariz. 124, ¶ 21, 91 P.3d 346,

---

[6]The Hennings produced evidence that the pertinent bar employees had been previously hired and trained by Montecini.

9

352 (App. 2004); *Pruitt v. Pavelin*, 141 Ariz. 195, 202-03, 685 P.2d 1347, 1354-55 (App. 1984); *Kassman v. Busfield Enters., Inc.*, 131 Ariz. 163, 165, 167, 639 P.2d 353, 355, 357 (App. 1981).[7]

**¶17**         Citing *McGuire v. Arizona Protection Agency*, 125 Ariz. 380, 381-82, 609 P.2d 1080, 1081-82 (App. 1980), the Hennings correctly note that we have previously recognized a former employer may in some circumstances be liable for negligent hiring. There, a homeowner sued an alarm company after its former employee, who was "either a wanted felon or a person with a long felony record," returned to a home where he had installed an alarm system, disconnected the alarm, and stole the homeowner's possessions. *Id.* at 381, 609 P.2d at 1081. In a divided opinion, this court held that, "[i]n light of the sensitive nature of the work and the temptations and opportunity attendant thereto, defendant owed a duty to plaintiff to employ a responsible and trustworthy person, without criminal proclivity that could reasonably be determined, to install the alarm system." *Id.* at 382, 609 P.2d at 1082.[8]

---

[7]We do not find persuasive the cases the Hennings rely on from other jurisdictions. All involve a current rather than a former employee, and in each case the employee committed a crime or an intentional tort, not a negligent act. *See, e.g., Van Horne v. Muller*, 705 N.E.2d 898, 903 (Ill. 1998); *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 908, 911 (Minn. 1983); *Interim Pers. of Cent. Va., Inc. v. Messer*, 559 S.E.2d 704, 707 (Va. 2002).

[8]We note the court in *McGuire* appeared to base liability on a provision in the Restatement (Second) of Torts § 302B (1965), not on Restatement (Second) of Agency § 213 (1958). *See* 125 Ariz. at 382, 609 P.2d at 1082; *but see Pruitt v. Pavelin*, 141 Ariz. 195, 201, 685 P.2d 1347, 1353 (App. 1984) (interpreting *McGuire* as recognizing cause of action for negligent hiring).

10

¶18 However, that case is inapposite in at least one crucial respect. When the alarm company negligently employed the felon to install security systems, it owed a duty of care to its current customers. McGuire was a current customer of the company during the felon's employment and when the felon installed the alarm. *Id.* at 381, 609 P.2d at 1081. Thus, the alarm company owed a duty of care to McGuire specifically when it committed the allegedly negligent acts. Here, however, the Hennings produced no evidence that Kristofer and Zenizo were Montecini's customers at the time Montecini trained or supervised the relevant bar staff and thus were among those to whom Montecini owed a duty of care.

¶19 Assuming, without deciding, that an employer may under some circumstances have a duty to those harmed by acts of a former employee, we decline to recognize any such duty in the context of dram shop liability. Preliminarily, our jurisprudence has repeatedly determined the scope of a defendant's duty to third parties with reference to the defendant's right to control the person, place, or instrumentality causing injury. *See, e.g., Ft. Lowell-NSS Ltd. P'ship*, 166 Ariz. at 101-04, 800 P.2d at 967-70 (landowner who does not control premises not liable for injuries on property); *Ruelas v. Staff Builders Pers. Servs., Inc.*, 199 Ariz. 344, ¶¶ 4-5, 18 P.3d 138, 140 (App. 2001) (general employer liable for acts of lent-employee tortfeasor only if employer had "control of the details of the particular work being done at the time of the injury-causing incident"); *Callender*, 180 Ariz. at 441, 885 P.2d at 129 (entity with no control over "sale, service, furnishing or supplying of alcohol" not subject to dram shop liability). That jurisprudence renders us reluctant to expose a former

11

employer to liability based on the actions of persons the employer no longer has any right to train, supervise, discipline, or terminate.

¶20 Moreover, our legislature has specifically considered and limited the class of persons who owe a duty of care in the service of alcohol. *See* §§ 4-301 through 4-312. Although those provisions do not specifically address whether an employer has a duty of care that extends to the actions of former employees, the statutes generally limit potential liability to "a licensee or an employee of a licensee acting during the employee's working hours or in connection with such employment." § 4-301; *see also* § 4-311 (describing circumstances under which "licensee" liable).[9] Such language suggests that our legislature intended to limit an employer's dram shop liability to those circumstances in which the employer has the right and ability to control an employee's actions—during working hours and "in connection with . . . employment."[10] Were we to recognize a common-law duty of care for the actions of those serving alcohol in the absence of any employment relationship at all, we would thwart this implicit policy judgment of our legislature.

---

[9]Those limitations of liability apply only to the "furnishing or serving of spirituous liquor to a person of the legal drinking age." A.R.S. § 4-301.

[10]The Restatement of Torts similarly anchors the scope of an employer's duty for the actions of an employee to the employer's right to control the employee. See, e.g., Restatement (Second) of Torts § 317 (employer liable for actions of employee outside scope of employment when employer has (1) right to control employee's actions, (2) right to control instrumentality used by employee to commit tort, or (3) right to control premises upon which employee commits tort); § 414 (person employing independent contractor liable for tortious actions of contractor when employer retains control of any part of work and fails to exercise reasonable care in exerting that control).

¶21 The hazards of imposing a duty of care on those who lack such control are especially pronounced here. Not only did Montecini no longer employ the allegedly culpable bar staff but, unlike the facts in *McGuire*, these employees had retained their positions with a new operator of the same premises. As the new operator of the business and holder of its liquor license, Zimbow had acquired the right and the duty to train, supervise, and terminate the bar's employees at the time of the incident. To hold that Montecini owed a duty of care to the Hennings under such circumstances would mean that an employer could never escape potential liability for the actions of a former employee. We decline to recognize an extension of duty with such far-reaching implications for the employer-employee relationship in the absence of any compelling judicial precedent or express legislative encouragement for doing so.

¶22 Affirmed.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
PHILIP E. ESPINOSA, Judge


_____
GARYE L. VÁSQUEZ, Judge

13