IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| GLORIA R. VASQUEZ, | ) | 2 CA-CV 2007-0148 |
| | ) | DEPARTMENT A |
| Plaintiff/Appellant, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| THE STATE OF ARIZONA; THE | ) | |
| STATE OF ARIZONA DEPARTMENT | ) | |
| OF PUBLIC SAFETY; and COCHISE | ) | |
| COUNTY, | ) | |
| | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20066409

Honorable Charles V. Harrington, Judge

AFFIRMED IN PART
REVERSED IN PART AND REMANDED

Law Office of David E. Hill, P.L.C.
  By David E. Hill                                                             Tucson
Attorney for Plaintiff/Appellant

Terry Goddard, Arizona Attorney General
  By Catherine M. Stewart                                             Tucson
Attorneys for Defendants/Appellees
The State of Arizona and The Arizona
Department of Public Safety

Kimble, Nelson, Audilett & Kastner, P.C.
  By Daryl A. Audilett and Rebecca Parker-Perry                    Tucson
                                        Attorneys for Defendant/Appellee
                                                        Cochise County

Law Offices of Charles M. Brewer, Ltd.
  By David L. Abney                                               Phoenix

    and

Haralson, Miller, Pitt, Feldman & McAnally, PLC
  By Stanley G. Feldman                                            Tucson
                                           Attorneys for Amicus Curiae
                                      The Arizona Trial Lawyers Association

---

P E L A N D E R, Chief Judge.

¶1        In this wrongful death action, plaintiff/appellant Gloria Vasquez appeals from the trial court's grant of motions for summary judgment and dismissal of the complaint in favor of defendants/appellees Cochise County, the State of Arizona, and the Arizona Department of Public Safety (DPS).  She contends the trial court erred in finding her notice of claim against the state insufficient under A.R.S. § 12-821.01(A) and in ruling that the county and state owed no duty to her.  We agree in part with her first contention and, therefore, reverse the judgment in favor of the state on Vasquez's wrongful death claim against it.  We otherwise find no error and affirm the remaining judgments.

**Background**

¶2        "On appeal from a grant of summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom

2

judgment was entered." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 2, 965 P.2d 47, 49 (App. 1998). In November 2004, DPS Officer Tim Wiedemann and a Cochise County Sheriff deputy noticed a Dodge pickup truck that Wiedemann suspected might have been stolen. A records check on its license plate confirmed the truck had been reported stolen, and Wiedemann followed it for about twenty-five minutes while coordinating with other officers in the area to assist him in stopping it.

¶3 When Wiedemann ultimately initiated a traffic stop by activating his emergency lights and siren, the driver of the truck started to move toward the shoulder of the road, but he then accelerated and fled. A high-speed pursuit ensued, during which the truck, according to Wiedemann, "went into the on-coming lane numerous times." At that point, other DPS and county officers had blocked off the highway ahead and were prepared to deploy "spike strips" to stop the truck. Wiedemann "backed off" his pursuit and the truck hit the strips, causing it to leave the roadway and roll into the desert. The driver died at the scene.

¶4 Officers did not find any identification in the truck, at the scene, or on the driver's person, but a cellular telephone as well as some unspecified photographs were found in the truck and scattered about. The driver's body was taken to the Cochise County Medical Examiner's Office for an autopsy. Because the driver's identity remained unknown, the body received an indigent burial at county expense. About two months after the incident, the deceased driver was identified as Angel Romo, a fifteen-year-old runaway who had been on juvenile intensive probation at the time. The identification was made when Angel's mother,

3

appellant Gloria Vasquez, provided his fingerprints to the county's Medical Examiner's Office. She was notified of that identification and his death in January 2005. Her last contact with Angel had been in September 2004, about two months before the incident, when he had left home without permission for the last time.

¶5        Vasquez subsequently filed this action against the state, DPS, Cochise County, and the City of Douglas. Before filing her complaint, Vasquez timely "filed" and served a notice of claim against the state, notifying it that she had a claim for wrongful death pursuant to A.R.S. § 12-611 and for "violation of her son's Fourteenth Amendment rights under 42 U.S.C.A. § 1983 in that the DPS employees actively created a dangerous situation that led to Angel Romo's death." In her original complaint, she alleged a wrongful death claim only against the state, DPS, and the City of Douglas and separate claims against Cochise County for wrongful handling of a dead body and negligent infliction of emotional distress. Vasquez later amended her complaint, adding those two latter claims against the state and DPS and withdrawing the claims against Douglas. She did not file or serve a notice of claim as to those two new claims against the state.[1]

¶6        Cochise County moved for summary judgment, arguing, inter alia, it had no duty to identify the deceased driver or to notify Vasquez of her son's death. The county also maintained it was not liable for any alleged negligence on the part of the county's medical

_____

[1]Although Cochise County did not move for dismissal or summary judgment below based on the notice-of-claim statute, A.R.S. § 12-821.01, and does not urge us to affirm the judgment in its favor on that ground, the record does not reflect whether Vasquez ever filed a notice of claim against the county.

4

examiner because he was an independent contractor. The state joined in the county's motion and also moved to dismiss the action against it pursuant to Rule 12(b)(6), Ariz. R. Civ. P., based on Vasquez's failure to strictly comply with the notice-of-claim requirements in § 12-821.01(A). The trial court granted both motions, ruling that neither the county nor the state "owed [any] legal duty to [Vasquez] to identify the human remains of [her] decedent," Angel Romo. The court further ruled that Vasquez had not satisfied the requirements of § 12-821.01(A) on any of her claims against the state, mandating dismissal of those claims on that ground as well. This appeal followed.[2]

## Discussion

### I. Notice of claim on wrongful death claim

¶7        Vasquez's notice of claim against the state set forth in some detail her factual allegations concerning the events surrounding the incident in which her son was killed and demanded $750,000 to settle the claim. She also described the decedent, Angel Romo, as her "15-year old son" but said nothing more to explain the settlement amount she demanded. In finding the notice of claim insufficient under § 12-821.01(A), the trial court noted that Vasquez had provided "no information about the relationship between [her] and the son" and "no facts . . . which would permit a governmental entity to evaluate damages." Those deficiencies in the notice of claim, the court ruled, required dismissal of the wrongful death

---

[2]Vasquez appealed from the trial court's unsigned minute entry order and "any judgments entered with respect thereto." The trial court subsequently signed and entered final judgments. Although Vasquez's notice of appeal was premature, we have jurisdiction of the appeal. *See* Ariz. R. Civ. App. P. 9(a); *Barassi v. Matison*, 130 Ariz. 418, 421, 636 P.2d 1200, 1203 (1981).

claim against the state. In challenging that ruling, Vasquez maintains she complied with the statutory requirements and, consequently, her claims against the state should not have been dismissed.

**¶8** Preliminarily, we note that, although the trial court granted the state's motion to dismiss pursuant to Rule 12(b)(6), it considered Vasquez's notice of claim, which was not included in the complaint but rather was an exhibit to the state's motion. Because the court considered "matters outside the pleading," it should have treated the motion as one for summary judgment. *See* Ariz. R. Civ. P. 12(b); *Jones v. Cochise County*, 218 Ariz. 372, ¶ 7, 187 P.3d 97, 100 (App. 2008); *see also Backus v. State*, 534 Ariz. Adv. Rep. 26, ¶¶ 13-14 (Ct. App. July 17, 2008); *Yollin v. City of Glendale*, 536 Ariz. Adv. Rep. 20, ¶ 6 (Ct. App. Aug. 5, 2008). We therefore review de novo whether any dispute of material fact exists and whether the trial court erred in applying the law. *See Jones*, 218 Ariz. 372, ¶ 7, 187 P.3d at 100. We also review de novo the "trial court's determination that [Vasquez]'s notice of claim failed to comply with § 12-821.01." *Id.*

**¶9** In pertinent part, Arizona's notice of claim statute, § 12-821.01(A), provides:

> Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

6

These "statutory requirements serve several important functions: They '"allow the public entity to investigate and assess liability, . . . permit the possibility of settlement prior to litigation, and . . . assist the public entity in financial planning and budgeting."'" *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, ¶ 6, 152 P.3d 490, 492 (2007), *quoting Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, ¶ 9, 144 P.3d 1254, 1256 (2006), *quoting Martineau v. Maricopa County*, 207 Ariz. 332, ¶ 19, 86 P.3d 912, 915-16 (App. 2004).

¶10 Vasquez argues her notice of claim "complied in all necessary respects with A.R.S. § 12-821.01." She maintains that, because "a claim for 'wrongful death' cannot be mathematically liquidated" and "is dependent upon . . . many intangibles which cannot be documented effectively," it would be "unreasonable to suggest that [she] . . . should have been required to provide more detailed information in her Notice of Claim." Relying primarily on *Deer Valley*, however, the state argues the trial court properly dismissed Vasquez's wrongful death claim because her "notice of claim contained no facts supporting the amount demanded in settlement as the notice-of-claim statute requires."

¶11 In *Deer Valley*, our supreme court addressed the sufficiency of a notice of claim filed in an employment case involving a wrongful termination claim against a school district. 214 Ariz. 293, ¶¶ 1-2, 152 P.3d at 491. In that case, the plaintiff had sent a "'claim letter'" to the district, alleging that she had lost her salary and anticipated raises and also had sustained damages "no less than" certain specified amounts for emotional distress and for harm to "her reputation of employment." *Id.* ¶¶ 2-3. The court concluded that, "[b]y failing

7

to state a specific amount that she would accept to settle her claims, [the plaintiff] failed to comply with that statutory requirement."  *Id*. ¶ 11.

**¶12**　　Importantly, the court in *Deer Valley* addressed only the limited issue of whether the claimant's notice of claim included a "specific sum," as § 12-821.01(A) requires. *Id*. n. 3; *see also Backus*, 534 Ariz. Adv. Rep. 26, ¶ 15.  The court expressly declined to reach the question of whether the notice "fail[ed] to provide facts supporting the amount claimed." *Deer Valley*, 214 Ariz. 293, n.3, 152 P.3d at 494 n.3.  The court noted in dictum, however, that "the claim letter d[id] not provide *any* facts supporting the claimed amounts for emotional distress and for damages to [the claimant]'s reputation."  *Id*.; *see also Backus*, 534 Ariz. Adv. Rep. 26, ¶¶ 17-18.

**¶13**　　*Deer Valley* established that a notice of claim must demand a clear, unqualified, and specific sum for which the claim can be settled.  *See Jones*, 218 Ariz. 372, ¶¶ 8-9, 187 P.3d at 100.  But, as Division One of this court recently noted, it "provides no guidance on what may or may not be sufficient facts [in support of such a sum] beyond the one narrow circumstance of no facts at all."  *Backus*, 534 Ariz. Adv. Rep. 26, ¶ 18.  At oral argument in this court, however, the state asserted that *Backus* was wrongly decided and that Division One overlooked the guidance our supreme court gave in *Deer Valley*.  Specifically, the state points to the following language in *Deer Valley*:

> The attendant statutory obligation that claimants present "facts supporting that amount" requires that claimants explain the amounts identified in the claim by providing the government entity with a factual foundation to permit the entity to evaluate the amount claimed.  This latter requirement ensures that claimants will not demand unfounded amounts that constitute

8

"quick unrealistic exaggerated demands." In tandem, these two statutory mandates ensure that government entities will be able to realistically consider a claim.

214 Ariz. 293, ¶ 9, 152 P.3d at 493 (citation omitted).

¶14 According to the state, the *Deer Valley* court found, albeit in dicta, the claim letter in that case lacked "*any* facts supporting the claimed amounts for emotional distress and for damages to [plaintiff's] reputation," *id*. n.3, even though her claim letter was more detailed and extensive than Vasquez's notice of claim in this case.[3] Unlike *Backus*, however, *Deer Valley* did not involve a wrongful death claim and did not address the nature or extent of facts required to support the specific amount demanded for such a claim.

¶15 Nonetheless, the state maintains, and the trial court agreed, that Vasquez's notice of claim lacked any facts to support the amount she demanded to settle the claim. According to the state, Vasquez was required to include a "description of the nature and quality of her relationship with her son and the emotional impact of his death on her." Section 12-821.01(A), however, does not expressly require any such facts, but rather merely requires "a specific amount for which the claim can be settled and the facts supporting that amount." And, unlike the second sentence of subsection A, which pertains to liability claims,

---

[3]In support of its argument, the state also points to the following statement in *Yollin*, 536 Ariz. Adv. Rep. 20, ¶ 27: "The plain meaning of the statute and its purpose alike support the inference that the supporting facts requirement demands a recitation of how past events harmed the claimant and led to his offer." In our view, however, Vasquez's notice of claim satisfied those requirements. Additionally, in the same paragraph to which the state refers, the court in *Yollin* stated that a plaintiff does "not need to disclose every possible fact supporting his offer, including how to calculate his pain and suffering." *Id*. It also stated that "[a] notice of claim does not require trial level proof of damages or a disclosure statement sufficient to satisfy Rule 26.1, Arizona Rules of Civil Procedure." *Id*.

the third sentence addressing the amount of damages claimed does not require such facts to be "sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." § 12-821.01(A); *Backus*, 534 Ariz. Adv. Rep. 26, ¶¶ 16, 19; *see also Yollin*, 536 Ariz. Adv. Rep. 20, ¶¶ 23-24, 27. Thus, if a claimant provides "*any* facts to support the proposed settlement amounts, regardless of how meager," he or she has complied with the statutory requirements. *Backus*, 534 Ariz. Adv. Rep. 26, ¶ 28; *see also id.* ¶ 31.

¶16 We turn, then, to Vasquez's notice of claim and consider whether it contains any facts to support her demand in the "specific amount" of $750,000. § 12-821.01(A). We agree with the state that "[t]he plain language of the statute does not support . . . an exemption" for wrongful death claims from the statutory requirements. Nonetheless, in gauging compliance with § 12-821.01(A), we find it appropriate to consider the cause of action in determining what facts must be provided in support of the monetary amount claimed. *See Backus*, 534 Ariz. Adv. Rep. 26, ¶¶ 20-22, 28. In the context of a wrongful death claim, the trier of fact is asked to "give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover." A.R.S. § 12-613. One such party who may recover is a surviving parent. A.R.S. § 12-612; *see also Knauss v. DND Neffson Co.*, 192 Ariz. 192, 199, 963 P.2d 271, 278 (App. 1997). "Allowable items of injury" for which damages may be claimed and recovered "are loss of love, affection, companionship, consortium, personal anguish and suffering." *Mullen v. Posada del Sol Health Care Ctr.*, 169 Ariz. 399, 400, 819 P.2d 985, 986 (App. 1991).

10

**¶17**　　　As noted earlier, Vasquez stated in her notice of claim that the decedent, Angel Romo, was her "15-year old son." Although "it may have been optimal" for Vasquez to have provided some details about her relationship with her son, *Backus*, 534 Ariz. Adv. Rep. 26, ¶¶ 29, 31, the facts that Vasquez is decedent's mother and that her son died prematurely when he was only fifteen years old were sufficient to support her claimed damages. *Id*. ¶¶ 28-31. Those facts showed that Vasquez was a surviving party under the wrongful death statutes. § 12-612. And "fair and just" damages in the amount for which Vasquez offered to settle could be based merely on the fact that Angel was her son and had died at such a young age. *See* § 12-613; *see also Backus*, 534 Ariz. Adv. Rep. 26, ¶ 30 (noting in wrongful death action it may be "unreasonable . . . to expect surviving family members to provide some level of factual detail to justify and value their intangible grief over the loss of a loved one").

**¶18**　　　Thus, because Vasquez provided some facts in support of the amount claimed, "regardless of how meager," her notice "met not only the literal language of the statute but also any requirement that may be implied from *Deer Valley*." *Backus*, 534 Ariz. Adv. Rep. 26, ¶ 28; *see also id.* ¶ 31 (in wrongful death action, "*any* facts in support of the claimed amount constitute the minimal compliance necessary to satisfy the statute"). If the state believed it needed more facts about Vasquez's relationship with her son or any other

information in order to investigate or evaluate her claim, it certainly could have asked.[4] *Id.* ¶¶ 24, 29. The statute, however, does not require more facts. *Id.* ¶ 29.

**¶19** As the court held in *Backus*, we similarly hold that, "[i]n the context of the wrongful death claim[] being advanced here," Vasquez's "notice[] of claim w[as] sufficient to meet any requirement implied by *Deer Valley* with respect to 'a factual foundation' supporting the proposed settlement amount." *Id.* ¶ 28, *quoting Deer Valley*, 214 Ariz. 293, ¶ 9, 152 P.3d at 493.[5] Accordingly, we conclude the trial court erred in dismissing Vasquez's

---

[4]We do not suggest, however, the state has an obligation under any circumstances to request more facts, and certainly not when the claimant has failed to provide any facts in support of the damage amount claimed. Nonetheless, "[t]he claim statute anticipates that government entities will investigate claims, and the supporting facts requirement is intended to be a relatively light burden on claimants, just enough to facilitate the government's investigation." *Yollin*, 536 Ariz. Adv. Rep. 20, ¶ 25.

[5]Aside from its notice-of-claim contentions, the state does not argue that the trial court's dismissal of Vasquez's wrongful death claim was proper and should be upheld on any other basis. Because we reverse that ruling, and because we conclude in section II below that the trial court properly entered summary judgment in favor of the county and state on her other two claims based on lack of duty, we need not decide whether *Deer Valley* is retroactively applicable. *See Backus*, 534 Ariz. Adv. Rep. 26, n.8; *Jones*, 218 Ariz. 372, n.11, 187 P.3d at 106 n.11. Nor do we address Vasquez's arguments that the state should be equitably estopped from asserting its notice-of-claim defense and that, contrary to the trial court's ruling, she was not required to file a new or amended notice of claim on her amended counts against the state for negligent infliction of emotional distress and wrongful handling of a dead body. *See Haab v. County of Maricopa*, 532 Ariz. Adv. Rep. 25, ¶¶ 1, 6, 24 (Ct. App. June 5, 2008) (because plaintiff's original notice of claim did not describe second set of acts alleged in his complaint, claim notice did not comply with § 12-821.01(A) and plaintiff was required to amend notice or file new one in order to preserve additional claims).

wrongful death claim against the state based on the allegedly deficient notice of claim under § 12-821.01(A).[6]

## II. Other tort claims

**¶20** We next address Vasquez's claims for wrongful handling of a dead body and infliction of emotional distress based on alleged negligence in "inspect[ing] or investigat[ing] the scene and related facts of the accident and the person of Angel Romo." In granting summary judgment in favor of both defendants on those claims, the trial court ruled the county and state "owed no legal duty to [Vasquez] to identify the human remains of [the] decedent." Contrary to that ruling, Vasquez argues, the county and state "owed a duty of care to Angel Romo and to [her]." "On appeal from a summary judgment, we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell*, 192 Ariz. 313, ¶ 8, 965 P.2d at 50.

**¶21** "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the

---

[6]The amicus curiae Arizona Trial Lawyers Association (ATLA) urges us to find that the state waived its notice-of-claim argument because it did not move to dismiss on that ground until about a year and a half after Vasquez filed her complaint. In light of our conclusion that Vasquez complied with the statute on her wrongful death claim, and because she did not assert waiver below or on appeal, we do not address ATLA's waiver issues. *See Yollin*, 536 Ariz. Adv. Rep. 20, n.2; *see also id.* n.9 ("We will not address new issues raised by the amicus curiae."); *Haab*, 532 Ariz. Adv. Rep. 25, n.4 (refusing to address claimant's new assertion on appeal that county "waived its argument under the statute"); *Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, ¶ 17, 91 P.3d 1019, 1023 (App. 2004) ("Generally, we will consider an issue not raised in an appellant's opening brief as abandoned or conceded.").

resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, ¶ 9, 150 P.3d 228, 230 (2007). Thus, "a negligence action may be maintained only if there is a duty or obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985); *see also Gipson*, 214 Ariz. 141, ¶ 11, 150 P.3d at 230 ("Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained.").

¶22 Because Vasquez alleged negligence as the basis for both her claims of infliction of emotional distress and wrongful handling of a dead body, we first analyze whether the county owed a duty to Vasquez. Whether a defendant owes a duty of care is a question of law, which we review de novo. *See Markowitz*, 146 Ariz. at 354, 706 P.2d at 366 ("The issue of duty is usually one for the court as a matter of law."); *see also Gipson*, 214 Ariz. 141, ¶ 9, 150 P.3d at 230 ("The first element [of negligence], whether a duty exists, is a matter of law for the court to decide."); *Henning v. Montecini Hospitality, Inc.*, 217 Ariz. 242, ¶ 6, 172 P.3d 430, 432 (App. 2007) (appellate court reviews legal question of duty de novo). Vasquez posits several different but interrelated theories in support of her argument that the state and county had a duty to reasonably investigate Angel's death, identify his body, and return it to her for proper burial. We address each in turn.

¶23 Quoting from A.R.S. § 28-624(D), Vasquez argues the county and state "owed a duty to [Angel] and his mother to conduct [the] pursuit and his apprehension" "'with due regard for the safety of all persons.'" Section 28-624 provides that, under certain

14

circumstances, drivers of authorized emergency vehicles may violate specified traffic laws when in pursuit of a suspect or responding to an emergency call. Subsection D, on which Vasquez relies, imposes on such drivers a "duty to drive with due regard for the safety of all persons and does not protect the driver from the consequences of the driver's reckless disregard for the safety of others." *See also* A.R.S. § 28-775(C).

¶24 Although we do not address the applicability of that statute to Vasquez's wrongful death claim, we do not view it as creating a duty toward Vasquez to investigate Angel's death or identify his body after the pursuit had ended and he had crashed his vehicle. As relevant here, subsection D merely addresses the duty a driver of an emergency vehicle has to *pursue* with due care. *See Herderick v. State*, 23 Ariz. App. 111, 115, 530 P.2d 1144, 1148 (1975); *see also Estate of Aten v. City of Tucson*, 169 Ariz. 147, 151, 817 P.2d 951, 955 (App. 1991). We agree with the state that § 28-624 neither "establish[es] a duty to identify suspects killed while fleeing from police in order to make next-of-kin notifications" nor applies "to activities other than driving and to individuals other than fleeing suspects and innocent bystanders on or in the vicinity of a roadway." The statute simply does not address any duty related to post-pursuit investigations.

¶25 Vasquez further maintains that the county and state's "apprehension of Angel created a special relationship between him, [her] and [those entities]." She relies on the Restatement (Second) of Torts § 314A(4) (1965) for that proposition. That section of the Restatement provides: "One who is required by law to take or voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for

15

protection is under a similar duty to the other." *See DeMontiney v. Desert Manor Convalescent Ctr., Inc.*, 144 Ariz. 6, 11, 695 P.2d 255, 261 (1985) (applying Restatement § 314A and noting "duty to protect the other against unreasonable risk of harm extends to risks arising from the acts of the injured party himself").

¶26 As the defendants point out, however, Angel never was apprehended or taken into custody, and "[n]o custodial relationship was ever established" between him and the various law enforcement officers "before he flipped the truck and was killed." *See, e.g., Wertheim v. Pima County*, 211 Ariz. 422, ¶¶ 11-14, 21-22, 122 P.3d 1, 3-4, 6 (App. 2005) (no special relationship existed to create any duty owed by government entities to person killed by their off-duty employee); *Bloxham v. Glock Inc.*, 203 Ariz. 271, ¶¶ 1, 7-8, 53 P.3d 196, 198, 199-200 (App. 2002) (absent any special relationship, no duty owed by gun manufacturer or gun show operator to parents of children killed by third party with handgun sold at gun show). Indeed, on the record before us, Angel never was "deprive[d] . . . of his normal opportunities for protection" and could have stopped his vehicle, as the pursuing DPS officer attempted to have him do, at any time. Restatement § 314A(4).

¶27 Moreover, neither the language of Restatement § 314A(4) nor its related comments or illustrations suggests that that provision might apply to one who "takes the custody" of a dead body rather than of a living person. Vasquez has not cited, nor have we found, any case in which that section has been so applied. And the "similar duty" of which § 314A(4) speaks is the duty "to protect [the other] against unreasonable risk of physical harm" and "to give them first aid after [the defendant] knows or has reason to know that [the

16

other is] ill or injured." Restatement § 314A(1). Such duties clearly are meaningless when the other person to whom they allegedly are owed is dead. Thus, no special relationship under Restatement § 314A(4) existed so as to create a duty owed by defendants to Vasquez or the decedent.

¶28 Vasquez correctly argues, however, that "while a special relationship may foster a duty, its existence is not essential for a duty to exist—particularly if public policy warrants the same." As our supreme court stated in *Gipson*, "[a] special or direct relationship . . . is not essential in order for there to be a duty of care." 214 Ariz. 141, ¶ 18, 150 P.3d at 232. Similarly, the court noted that, "[a]s the common law [has] evolved . . . , courts [have] extended the scope of negligence actions by recognizing a more general duty of care applicable to suits among strangers." *Id*. n.3. But *Gipson*'s clarifying gloss on duty issues did not alter the well-established principle that, in order for a duty to exist, "the 'relationship of the parties [must be] such that the defendant [i]s under an obligation to use some care to avoid or prevent injury to the plaintiff.'" *Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix*, 216 Ariz. 454, ¶ 8, 167 P.3d 711, 715 (App. 2007), *quoting Markowitz*, 146 Ariz. at 356, 706 P.2d at 368; *see also Stanley v. McCarver*, 208 Ariz. 219, ¶¶ 10, 12, 92 P.3d 849, 852, 853 (2004); *Ontiveros v. Borak*, 136 Ariz. 500, 508, 607 P.2d 200, 208 (1983); *Wertheim*, 211 Ariz. 422, ¶ 10, 122 P.3d at 3; *Bloxham*, 203 Ariz. 271, ¶ 6, 53 P.3d at 199.

¶29 Vasquez also contends a duty of care "arose merely by the fact [the state and county] undertook an investigation following [Angel's] death." In *Gipson*, our supreme court observed that "[d]uties of care may arise from . . . conduct undertaken by the

17

defendant." 214 Ariz. 141, ¶ 18, 150 P.3d at 232; *see also Stanley*, 208 Ariz. 219, ¶ 7, 92 P.3d at 851. And the court has stated that once a municipality has "opted to provide police protection, [it] ha[s] a duty to act as would a reasonably careful and prudent police department in the same circumstances." *Austin v. City of Scottsdale*, 140 Ariz. 579, 581-82, 684 P.2d 151, 153-54 (1984). The court in *Austin* cautioned, however, that "[t]his is not a duty to protect each citizen within the [municipality's] geographic boundaries from all harms. By establishing a police department, a municipality becomes neither a general insurer of safety nor absolutely liable for all harms to its citizens." *Id.* at 582 n.2, 684 P.2d at 154 n.2. And, despite the broad statement of duty in *Austin*, we have not construed that case to mean that "a police agency, by its very existence, owes a duty to all persons to act reasonably at all times under all circumstances." *Wertheim*, 211 Ariz. 422, ¶ 17, 122 P.3d at 5.

¶30 Likewise, although a law enforcement agency might have some duty to investigate an accident, *see McDonald v. City of Prescott*, 197 Ariz. 566, ¶ 14, 5 P.3d 900, 902 (App. 2000), even a "'request for . . . police aid, or the undertaking by the police to make a report and assure appropriate action will be taken does not create a "special relationship" from which "duty" is born.'" *Morton v. Maricopa County*, 177 Ariz. 147, 150, 865 P.2d 808, 811 (App. 1993), *quoting Shelton v. City of Westminster*, 188 Cal. Rptr. 205, 213 (Ct. App. 1982). Thus, a special relationship between an investigating law enforcement agency and a decedent's family member does not arise merely by the agency undertaking to investigate an accident or resulting death. Similarly, that the county or DPS obviously investigated, at least to some extent, the subject incident that resulted in Angel's death does not necessarily

18

create a broader duty owed to Vasquez to identify his body or notify her of his death. Indeed, this court has expressly ruled that law enforcement agencies owe no duty to the family or friends of a decedent to identify that decedent. *Id.* at 150-51, 865 P.2d at 811-12. Although Vasquez broadly asserts the county and state were negligent in the investigation of Angel's death, the core of her complaint is the failure to identify him—something the state and county had no duty to do. *Id.*

¶31 The thoughtful dissent would find a duty here based merely on the defendants supposedly having undertaken "to participate in a high-speed chase that resulted in [Angel's] death," to exercise "exclusive responsibility for his body," and to make "some effort to identify it." *See* ¶¶ 48, 50, *infra* (Eckerstrom, J., concurring in part and dissenting in part). We do not quarrel with the dissent's general proposition that defendants, including law enforcement agencies, "may acquire a duty of care to others by undertaking conduct." *See* ¶ 53, *infra*. In our view, however, the dissent's reasoning stretches that concept well beyond reasonable limits in this case. Everything law enforcement undertakes conceivably might have some impact on a particular family or individual. If the dissent's broad view of "duty by undertaking" were the law, as the state points out, "[e]very unsolved crime could then theoretically give rise to a cause of action by the victim or a deceased victim's relatives for negligent investigation."

¶32 We also disagree with the dissent's assertion that *Austin* is not only "controlling" in this case but also should have governed our decision in *Morton*. *See* ¶ 52, *infra*. In summarily finding a duty in *Austin*, the court primarily focused on the trial court's

19

improper reliance on old, and since overruled, concepts of duty that hinged on whether a governmental entity owed "a specific obligation" to a particular individual. *Austin*, 140 Ariz. at 581, 684 P.2d at 153, *citing Ryan v. State*, 134 Ariz. 308, 310, 656 P.2d 597, 599 (1982), *overruling Massengill v. Yuma County*, 104 Ariz. 518, 456 P.2d 376 (1969). Neither that outdated concept nor the "provi[sion of] police protection," on which the finding of duty in *Austin* was based, has anything to do with this case. *Id.* at 581-82, 684 P.2d at 153-54.[7]

¶33　　　We also question, particularly with respect to the county, whether Vasquez met her burden of establishing any factual basis in the record that might support the dissent's conclusion that the county owed a duty to Vasquez because it "undertook some effort to identify" Angel's body. *See* ¶ 50, *infra*. *See Tollenaar v. Chino Valley Sch. Dist.*, 190 Ariz.

---

[7]The other cases on which the dissent relies are similarly unavailing. In *Stanley*, our supreme court held "only that[, despite the absence of a formal doctor-patient relationship between the parties,] a doctor who, for consideration, undertakes to read x-rays, on which he observes serious abnormalities, must act reasonably in reading the x-rays and reporting the results." 208 Ariz. 219, ¶ 21, 92 P.3d at 855. In support of its holding, the court cited the related §§ 323 and 324A of the Restatement (Second) of Torts (1965). *Stanley*, 208 Ariz. 219, ¶ 15, 92 P.3d at 854. Those Restatement sections are so clearly inapplicable here that Vasquez has not even cited or relied on them. *See Collette v. Tolleson Unified Sch. Dist., No. 214*, 203 Ariz. 359, ¶¶ 31-34, 54 P.3d 828, 835-36 (App. 2002); *Tollenaar v. Chino Valley Sch. Dist.*, 190 Ariz. 179, 180-82, 945 P.2d 1310, 1311-13 (App. 1997); *Daggett v. County of Maricopa*, 160 Ariz. 80, 85-86, 770 P.2d 384, 389-90 (App. 1989). As for *Newman v. Maricopa County*, 167 Ariz. 501, 503, 504, 808 P.2d 1253, 1255, 1256 (App. 1991), a case in which a forceful dissent was issued, the court's analysis of duty included the concept of foreseeable risks of harm, an approach our supreme court has now clearly abandoned. *See Gipson*, 214 Ariz. 141, ¶ 15, 150 P.3d at 231. And even if correctly decided, *Newman* was heavily influenced by its procedural posture—the trial court's premature granting of a motion to dismiss under Rule 12(b)(6), Ariz. R. Civ. P. *Newman*, 167 Ariz. at 503, 505-06, 808 P.2d at 1255, 1257-58. Finally, the dissent disregards this court's recent opinion in *Wertheim*, in which we specifically addressed and distinguished *Austin* and *Newman*. *See Wertheim*, 211 Ariz. 422, ¶¶ 17-19, 122 P.3d at 5-6.

20

179, 181-82, 945 P.2d 1310, 1312-13 (App. 1997) (rejecting theory of liability based on defendant's "undertaking" when plaintiffs failed to meet burden of supporting that theory "by 'showing that there is evidence creating a genuine issue of fact'" on it), *quoting Orme Sch. v. Reeves*, 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990). In opposing the county's motion for summary judgment below, Vasquez argued that "there is no evidence that Cochise County undertook any sort of effort to identify the remains of Angel Romo, other than a cursory look to see if he had [identification] on him at the time of the accident." Finally, we note that the dissent's approach of tethering the duty issue to the fact-intensive question of whether the defendants had undertaken "the task of identifying [Vasquez's] son's remains," *see* ¶ 56, *infra*, "necessarily [but impermissibly] involves an inquiry into the specific facts of an individual case." *Gipson*, 214 Ariz. 141, ¶ 16, 150 P.3d at 231. But "[t]he issue of duty is not a factual matter; it is a legal matter to be determined *before* the case-specific facts are considered." *Id.* ¶ 21.

¶34        The "analytical task" of resolving duty issues is sometimes difficult and can create "understandable confusion among the bar and lower courts." *Gipson*, 214 Ariz. 141, ¶ 39, 150 P.3d at 235 (Hurwitz, J., concurring). At this point, however, our supreme court has not "adopt[ed] a different conceptual approach," *id.* ¶ 33, under which "all people owe a duty of care to all others at all times." *Id.* ¶ 24.[8] Nor did *Gipson* involve claims against law

---

[8]We acknowledge that the court in *Gipson* recognized, but did not resolve, "whatever tension may exist between language in cases such as *Wertheim* and *Bloxham* and the concepts of duty suggested by *Ontiveros* or the draft Third Restatement [of Torts]." 214 Ariz. 141, n.4, 150 P.3d at 233 n.4. Under that new proposed draft, "'[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.'" *Id.*

enforcement agencies or other public entities. Despite the broad pronouncements of duty vis-á-vis government entities in cases such as *Austin* and *Newman v. Maricopa County*, 167 Ariz. 501, 503, 808 P.2d 1253, 1255 (App. 1991), on which Vasquez and the dissent also rely, this court subsequently ruled in *Morton* that no relationship giving rise to a duty existed between the family of a decedent and a police agency investigating his death. 177 Ariz. at 150-51, 865 P.2d at 811-12. We agree with the trial court that *Morton*, "although not identical [to this case], is sufficiently similar to provide guidance" and undermines Vasquez's claim based on failure to identify the decedent's body as Angel's.

¶35         Additionally, our decision in *Morton* was based not only on the lack of a special relationship between the parties, but also on public policy considerations. *See Gipson*, 214 Ariz. 141, ¶ 23, 150 P.3d at 232 ("Public policy may support the recognition of a duty of care."). As we stated in *Morton*:

> The state's interest in identifying human remains is primarily to foster public safety through the investigation of suspected homicides. The identification of remains, of course, incidentally benefits friends and relatives. Because this is not the primary purpose, however, no relationship is created which would give rise to a duty to the [decedent's surviving family].

177 Ariz. at 151, 865 P.2d at 812. Although this case does not involve a homicide or the discovery of a corpse or human remains after an unexplained death, the *Morton* court's

---

(alteration in *Gipson*), *quoting* Restatement (Third) of Torts: Liability for Physical Harm § 7(a) (Proposed Final Draft No. 1, 2005); *see also id.* ¶ 34 (Hurwitz, J., concurring). Vasquez does not urge adoption of that standard here, but even under that rule it is not clear how defendants' alleged acts or omissions in this case "create[d] a risk of physical harm" to others.

reasoning and conclusion remain sound, even if concepts of duty currently are in flux; and Vasquez has provided no principled basis to depart from our previous ruling on the duty-to-identify issue in *Morton*.

¶36 Vasquez, however, attempts to distinguish *Morton* on the ground that the decedent there was murdered and that Maricopa County, therefore, "was not even involved in the events giving rise to [his] death." In contrast, she argues, "[t]he relationship between Angel Romo's death and the standard investigation which was to follow, or should have followed, and [her] emotional distress was proximate and real, not tangential or remote." But our ruling in *Morton* did not turn on whether the county had causally been involved in the decedent's death. Additionally, to the extent Vasquez suggests we should find a duty because harm to her was foreseeable, our supreme court has foreclosed that argument. "[F]oreseeability is not a factor to be considered by courts when making determinations of duty . . . ." *Gipson*, 214 Ariz. 141, ¶ 15, 150 P.3d at 231.

¶37 For that same reason, we decline to follow *Vogelaar v. United States*, 665 F. Supp. 1295 (E.D. Mich. 1987), on which Vasquez also relies. In that case, the district court found that Michigan law would impose "a duty of reasonable care to plaintiff in the identification of her son's remains." *Id.* at 1306. It ruled that under that state's law, a court would "consider[] such factors as the degree of foreseeability that negligent conduct would create a risk of harm to the victim, the severity of such risk, and the likelihood of occurrence before imposing a duty of reasonable care." *Id.* The court ruled that, in view of the importance of the "cherished, respected, [and] sacred . . . right to bury our dead," "mental

23

distress [wa]s both foreseeable and likely to occur." *Id.* Again, however, that type of foreseeability analysis in determining the threshold legal issue of duty has no place in Arizona law. *See Gipson*, 214 Ariz. 141, ¶ 15, 150 P.3d at 231. In addition, unlike the county and state in this case, the federal government entity directly involved in *Vogelaar* had "[t]he ultimate responsibility for identifying casualties from the Vietnam War." 665 F. Supp. at 1301. In light of *Gipson* and *Morton*, we do not find the court's reasoning in *Vogelaar* persuasive or its result applicable here. In sum, the trial court did not err in ruling that the state and county owed no duty to Vasquez to investigate the accident more thoroughly or to identify her deceased son and, therefore, were entitled to summary judgment on that basis.

¶38        That conclusion does not necessarily end our inquiry because Vasquez also contends her claims are "grounded in" and independently actionable under the Restatement (Second) of Torts § 868 (1979). That section provides: "One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." Vasquez correctly points out that this court has recognized a cause of action under Restatement § 868. *See Tomasits v. Cochise Memory Gardens, Inc.*, 150 Ariz. 39, 40, 721 P.2d 1166, 1167 (App. 1986); *see also Morton*, 177 Ariz. at 151, 865 P.2d at 812.[9] Relying on that section and classifying her cause

---

[9]In *Ramirez v. Health Partners of Southern Arizona*, 193 Ariz. 325, 972 P.2d 658 (App. 1998), this court, "without retreating from our holdings in *Tomasits* and *Morton*," *id*. ¶ 32, noted that Restatement § 868 "appears to represent a minority view" and that "the majority rule continues to require 'intentional or malicious, as opposed to negligent, interference' with a dead body for liability to attach." *Id*. ¶¶ 27, 28, *quoting Burgess v.*

of action under the rubric of "wrongful handling of a dead body," she argues the trial court erroneously granted summary judgment on her claims that both the county and state were negligent "in failing to take proper steps to identify" her son's body, "in burying the body," and "in failing to return the body" to her upon request.

¶39 In our view, Restatement § 868 might apply and support a liability claim when the dead body is identified. It is not clear, however, whether that section applies when, as here, the defendant's allegedly negligent failure to identify the body leads to the type of conduct and harm to which § 868 refers. Although it also is not clear whether the concept of duty is inherently subsumed in that provision, we conclude a separate, preliminary analysis on the duty issue is required in a case such as this before § 868's rule of liability comes into play.

¶40 Because Vasquez does not allege any intentional or reckless acts or omissions, her various negligence claims, although anchored in Restatement § 868, hinge on her meeting the threshold, legal requirement of establishing that defendants owed her a legal duty of care. *See Gipson*, 214 Ariz. 141, ¶ 11 & n.2, 150 P.3d at 230, 231 n.2. Having concluded that the county and state owed no duty to identify Angel's body, Vasquez's claim under Restatement § 868 arguably fails for that reason alone. *See Strachan v. John F. Kennedy Mem'l Hosp.*, 538 A.2d 346, 349-50 (N.J. 1988) (suggesting that liability and recovery under Restatement § 868 hinge on threshold legal determination of duty); *cf. Walser v. Resthaven Mem'l Gardens, Inc.*, 633 A.2d 466, 472 (Md. Ct. Spec. App. 1993) ("If, indeed, there is a legally

---

*Perdue*, 721 P.2d 239, 245 (Kan. 1986).

cognizable right to have the bodies of the deceased next-of-kin remain undisturbed . . . there must . . . be a corresponding duty on the part of others not to interfere with that right.").

¶41    In *Morton*, however, this court concluded "Maricopa County had a legal duty through its medical examiner's office to not negligently prevent the proper interment or cremation of [the plaintiffs' son's] dead body." 177 Ariz. at 151, 865 P.2d at 812. Vasquez argues that A.R.S. § 36-831(3) imposes a duty on her to bury her son's body. By preventing her from fulfilling that obligation, she argues, the county caused her "severe emotional distress" by "taking custody of Angel, failing to perform an appropriate accident investigation, failing to identify his remains and allowing his remains to be buried without [her] knowledge or consent."[10]

¶42    In support of her argument, Vasquez relies on both *Tomasits* and *Morton*. We find both cases distinguishable. *Tomasits* dealt with "the question of liability for wrongful disinterment," 150 Ariz. at 40, 721 P.2d at 1167, and, more particularly, whether a punitive damage award was supported by sufficient evidence. *Id*. at 39, 721 P.2d at 1166. In that case, a cemetery sold the same burial plots to two different families and, when sued by the first family, disinterred and re-interred the bodies of Tomasits's parents, who had purchased

_____

[10]Citing *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668 (1979), the county points out that "Arizona courts have long held that a claim for negligent infliction of emotional distress requires a showing of bodily injury." Even assuming a *Keck* analysis would apply to Vasquez's claim for negligent infliction of emotional distress, it does not apply to her separate claim for wrongful handling of a dead body under Restatement § 868. Rather, "'[t]here is no need to show physical consequences of the mental distress' for emotional damages resulting from negligent interference with dead bodies." *Morton*, 177 Ariz. at 151 n.2, 865 P.2d at 812 n.2, *quoting* Restatement § 868, cmt. a (alteration in *Morton*).

26

the plots after the first family already had bought them. *Id.* at 39-40, 721 P.2d at 1166-67.

Tomasits was not notified of the disinterment. *Id*. at 40, 721 P.2d at 1167. This court

affirmed a judgment, including the punitive damage award, entered on the jury's verdict in

Tomasits's favor. *Id.* at 41, 721 P.2d at 1168. But we did not rule in *Tomasits* that a law

enforcement agency could be liable under Restatement § 868 for failing to identify a

body—the crux of Vasquez's claim here. Rather, *Tomasits* addressed only liability for

unlawful disinterment.

¶43        In *Morton*, the county medical examiner's office admitted it had incinerated

the deceased victim's remains despite the fact that "statutes in force at the time . . . required

the interment or cremation of dead bodies." *Id.* at 151-52, 865 P.2d at 812-13. We affirmed

the judgment of liability in plaintiffs' favor based solely on "negligence of the medical

examiner's office" because, by incinerating the body when it should not have, it had

prevented a proper burial of the body. *Id.* at 153, 865 P.2d at 814. Thus, liability in *Morton*

did not arise from the failure of the county sheriff's office to identify the decedent, but rather

from the actions of the medical examiner's office in handling the body, as we implicitly ruled

it had a duty to do under A.R.S. §§ 11-251(27), 11-599, and 11-600. *Morton*, 177 Ariz. at

151, 153, 865 P.2d at 812, 814.

¶44        The situation in this case is quite different. As the county argues, its medical

examiner followed the statutory requirements for handling Angel's body.[11] Under Arizona

---

[11]In view of our disposition of this matter, we need not address the county's argument that it is not liable for the actions of its medical examiner's office because it is an independent contractor.

27

law, when a medical examiner has completed a death investigation and "no other person takes charge of the body of the deceased," the medical examiner "shall cause the body to be delivered to the [closest] funeral establishment" which, upon determining indigency, "shall perform the normal county indigent burial." § 11-600(A). That is exactly what the medical examiner did here. Although Arizona statutes may "provide a sufficient basis for a duty of care," *Gipson*, 214 Ariz. 141, ¶ 24, 150 P.3d at 233, it would be inconsistent with the statutory requirement in § 11-600(A) for us to find a viable liability claim when the medical examiner followed the procedures the law prescribes.[12]

¶45        Vasquez maintains, however, that she "has never asserted that . . . a duty [to investigate the accident and identify Angel] fell on anybody but the Cochise County Sheriff's Department and/or the Department of Public Safety." But, as discussed above, Restatement § 868 does not impose liability for failing to thoroughly investigate an accident or identify a dead body. Vasquez does not explain how the alleged acts or omissions of the county sheriff's office and DPS can somehow be characterized as "remov[ing], withhold[ing],

---

[12]At oral argument in this court, Vasquez cited for the first time and without elaboration A.R.S. § 11-593(B). Any argument based on that statute, however, is waived. *See Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004) ("[I]ssues and arguments raised for the first time at oral argument on appeal are untimely and deemed waived."). But even were the argument not waived, § 11-593(B) does not support a finding of duty here. That statute requires a peace officer, when informed by a citizen of a dead body, to "promptly make or cause to be made an investigation of the facts and circumstances surrounding the death and report the results to the medical examiner or alternate medical examiner." Therefore, the statute only requires an officer to investigate the death and how it occurred—"the facts and circumstances" of the death—not the identity of the decedent, except insofar as an identification would aid in determining the circumstances of the death.

mutilat[ing] or operat[ing] upon" a dead body, the types of actionable conduct set forth in § 868. And unlike the situation in *Morton*, where the body of the decedent was destroyed, the county here followed the statutory requirements for burial and Vasquez did not establish an inability to eventually bury her son according to her wishes.

¶46 On this record, we cannot say the county or state "prevent[ed Angel's] proper interment or cremation" within the meaning of Restatement § 868 and *Morton*. *See Aguirre-Alvarez v. Regents of the Univ. of Cal.*, 79 Cal. Rptr. 2d 580, 585, 586 (Ct. App. 1998) (when public hospital at which decedent died "had no special relationship with any of decedent's family members" and complied with statutory requirement by presenting body to coroner, hospital "owed no duty to [decedent's family] and, in not notifying the family of decedent's demise, did not interfere with [their] right to have decedent properly interred"); *District of Columbia v. Smith*, 436 A.2d 1294, 1298 (D.C. 1981) (when decedent was unidentified and admitted to defendant's facility as "John Doe," court found no liability under Restatement § 868 for defendant's failure to identify decedent or for interfering with family's right to bury or otherwise dispose of body, and court distinguished other case in which liability stemmed from defendant hospital's failure to notify surviving spouse of husband's death, "given the defendant's knowledge of the decedent's identity"); *cf. Awtrey v. Norfolk & W. Ry. Co.*, 93 S.E. 570, 572 (Va. 1917) (failing to notify family of death was not withholding of body). In sum, the trial court did not err in granting summary judgment in favor of the county and state on Vasquez's claim for wrongful handling of a dead body.

29

**Disposition**

¶47      The trial court's judgments in favor of the state and county on Vasquez's claims for infliction of emotional distress and wrongful handling of a dead body are affirmed. The judgment in favor of the state on Vasquez's wrongful death claim is reversed, and the case is remanded for further proceedings on that claim.

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
GARYE L. VÁSQUEZ, Judge


E C K E R S T R O M, Judge, concurring in part and dissenting in part.

¶48      In this case, we address whether state and county law enforcement agencies owed a duty to the mother of a deceased juvenile to make reasonable efforts to identify the boy's remains, when those agencies undertook to participate in a high-speed chase that resulted in his death[13] and when those agencies subsequently had sole responsibility for, and custody of, his body. Although the well-reasoned majority opinion is consistent with this

_____

[13]I do not thereby suggest that the officers of the respective agencies necessarily engaged in any improper or negligent conduct in deciding to chase Angel. Whether the officers breached a reasonable standard of care in so doing is a jury question on the wrongful death claim unrelated to the issue of whether the agencies owed Vasquez any separate duty to identify her son.

court's previous holding in *Morton*, I cannot agree with my colleagues that, under pertinent Arizona jurisprudence, the agencies owed no duty of care under the circumstances of this case.

**¶49** Our supreme court repeatedly has observed that duties of care can arise from the conduct a person has undertaken. *Gipson*, 214 Ariz. 141, ¶ 18, 150 P.3d at 232; *Stanley v. McCarver*, 208 Ariz. 219, ¶ 7, 92 P.3d 849, 851 (2004) (special relationship creating duty "may find its basis in . . . undertakings"). The court previously applied that very principle when assessing the scope of a law enforcement agency's duty of care to others. *See Austin v. City of Scottsdale*, 140 Ariz. 579, 581-82 & n.2, 684 P.2d 151, 153-54 & n.2 (1984) (although police owed no duty to protect citizens from "all harms," agency had "duty to [surviving family of crime victim to] act as would a reasonably careful and prudent police department" once they have "opted to provide police protection" by receiving emergency calls). And, subsequent Arizona jurisprudence has relied on that analytical framework to determine whether law enforcement agencies owed any duty of care to specific plaintiffs. *See McDonald v. City of Prescott*, 197 Ariz. 566, ¶¶ 13-17, 5 P.3d 900, 902-03 (App. 2000) (citing *Austin* and holding that, although officers owed no duty "*per se*" to perform road maintenance, once officers undertook to routinely remove dangerous conditions from road, they owed duty to drivers to do so in a "'reasonably careful and prudent'" manner), *quoting Austin*, 140 Ariz. at 582, 684 P.2d at 154; *Newman v. Maricopa County*, 167 Ariz. 501, 503, 808 P.2d 1253, 1255 (App. 1991) (citing *Austin* and interpreting it to anchor duty of law enforcement agencies to others in the affirmative activities of law enforcement).

31

¶50 In this case, the agencies undertook to pursue the boy, undertook exclusive responsibility for his body, and consistent with the responsibilities arising from those actions, undertook some effort to identify it. Accordingly, they owed "a duty to act as would a reasonably careful and prudent police department in the same circumstances" in so doing. *Austin*, 140 Ariz. at 582, 684 P.2d at 154.

¶51 The majority relies on this court's decision in *Morton* in holding the named agencies nonetheless owed no duty to Vasquez to identify her son. In that case, in the context of a claim that the county medical examiner's office and county sheriff negligently had failed to identify a body, we held that neither the sheriff nor the examiner owed a duty to a murder victim's family "either to submit dental records to the Department of Public Safety or to solve a homicide within any specific time frame." 177 Ariz. at 149, 151, 865 P.2d at 810, 812.

¶52 Notwithstanding the similarity between the claim presented in *Morton* and the claim here, I would decline to follow that case for several reasons. First, although in *Morton* we addressed whether a state law enforcement agency owed a duty of care to others, this court did not discuss or cite *Austin*, a controlling Arizona supreme court opinion setting forth the relevant standards for analyzing that very question. Second, the holding in *Morton* is anchored almost exclusively in the reasoning of a California appellate court in *Shelton v. City of Westminster*, 188 Cal. Rptr. 205 (Ct. App. 1982). *See Morton*, 177 Ariz. at 150, 865 P.2d at 811. But *Shelton* does not focus on whether a law enforcement agency may acquire a duty of care by undertaking a specific responsibility. *See* 188 Cal. Rptr. at 211-13. And, the

32

portion of *Shelton* quoted in *Morton* suggests that law enforcement cannot acquire a duty of care by that method under California law. *Morton*, 177 Ariz. at 150, 865 P.2d at 811 ("'[T]he undertaking by police to make a [missing person] report and assure [that] appropriate action will be taken does not create a "special relationship" from which "duty" is born.'"), *quoting Shelton*, 188 Cal. Rptr. at 213.

¶53        Thus, to the extent *Morton* fails to discuss *Austin* or any other Arizona case following *Austin*, it does not answer the question raised here:  By undertaking the responsibility of identifying Angel's body, did the defendants owe a duty to Vasquez to conduct those actions in a reasonably prudent fashion?  To the extent *Morton*'s reliance on *Shelton* suggests this court may have implicitly rejected the notion that an agency's own conduct may give rise to a duty, any such holding would no longer accurately characterize Arizona law.  As discussed above, more recent opinions of our supreme court and the bulk of our state appellate jurisprudence applying *Austin* have clarified not only the general proposition that defendants may acquire a duty of care to others by undertaking conduct, but also that law enforcement agencies in particular may acquire a duty of care by doing so. *See Gipson*, 214 Ariz. 141, ¶ 18, 150 P.3d at 232 (special relationships supporting duty can arise from conduct undertaken by defendant); *Stanley*, 208 Ariz. 219, ¶ 13, 92 P.3d at 851 (imposing duty of care on physician with no direct relationship to patient based on physician's undertaking to review an x-ray and report its results); *see also McDonald*, 197 Ariz. 566, ¶¶ 13-17, 5 P.3d at 902-03 (law enforcement agency acquired duty to remove hazards on road because agency routinely undertook that responsibility); *Newman*, 167 Ariz.

33

at 503, 808 P.2d at 1255 (law enforcement acquires duty to exercise reasonable care as to activities it undertakes).

¶54        Finally, in *Morton*, we found that the state's primary motivation to identify the human remains did not support the imposition of a duty. Under the circumstances there, we reasoned that

> The state's interest in identifying human remains is primarily to foster public safety through the investigation of suspected homicides. The identification of remains, of course, incidentally benefits friends and relatives. Because this is not the primary purpose, however, no relationship is created which would give rise to a duty to the Mortons.

177 Ariz. at 151, 865 P.2d at 812. But here, unlike the circumstances that resulted in the identification of the body in *Morton*, the officers knew precisely how Angel had died—as a result of a rollover car crash that occurred as the officers pursued him. Therefore, the record here would not support a finding that the state's primary motivation in identifying the boy was to solve a homicide case. And, even assuming that a defendant's *primary purpose* for engaging in specific conduct remains a relevant consideration in determining whether such conduct creates a special relationship to claimants, there can be little doubt here that the boy's mother would have been an obvious and primary beneficiary of the agencies' efforts to identify his remains—and that, by undertaking the task of doing so, the agencies created a special relationship with her.

¶55        Although the majority agrees with the general proposition that defendants, including law enforcement, may acquire a duty of care to others by undertaking conduct, it fears the lack of "reasonable limits" on potential causes of action arising from application

34

of that principle. But, both our legislature and our courts are capable of narrowing the range of actionable conduct in the interests of public policy. *See Gipson*, 214 Ariz. 141, ¶¶ 34- 41 (Hurwitz, J., concurring) (analyzing whether public policy as articulated by legislature and courts justifies imposition of duty). And, a thread of longstanding and recent Arizona supreme court jurisprudence, supported by contemporary scholarly wisdom, has eschewed the practice of limiting an actor's duty of care based exclusively on preexisting "categorical relationships" identified in the common law or restatement. *See, e.g., id.* ¶¶ 18-22 (majority opinion); *Stanley*, 208 Ariz. 219, ¶ 8, 92 P.3d at 851-52 (acknowledging trend in Arizona jurisprudence to erode "[t]he requirement of a formalized relationship between the parties" when assessing the duty of care owed by one party to another); *Ontiveros v. Borak*, 136 Ariz. 500, 509, 667 P.2d 200, 209 (1983) (every person under duty to avoid creating situations that pose unreasonable risk of harm to others); 1 Dan B. Dobbs, *The Law of Torts* § 227, at 579 (2001) ("[N]o duty rules should be invoked only when all cases they cover fall substantially within the policy that frees the defendant of liability."). Indeed, Justice Hurwitz's even broader suggestion that the court should "view the duty of reasonable care as the norm, and depart from that norm only in those cases where public policy justifies an exception to the general rule," *Gipson*, 214 Ariz. 141, ¶ 35, 150 P.3d at 234 (Hurwitz, J., concurring), has yet to be rejected by our supreme court. *See id.* n.4 (majority acknowledging that, based on its holding in *Ontiveros*, "one could conclude that people generally 'owe a duty to exercise reasonable care to avoid causing physical harm' to others, subject to exceptions that eliminate

35

or modify this duty for reasons of policy"), *quoting Restatement (Third) of Torts: Liability for Physical Harm* § 7 (Proposed Final Draft No. 1, 2005).

¶56 For the foregoing reasons, I would hold that the defendants, through their respective agencies, DPS and the Cochise County Sheriff's Department, owed a duty of care to Vasquez once they undertook the task of identifying her son's remains. Of course, were we to find a duty here, it would remain for the trier of fact to determine whether the agencies acted as would "a reasonably careful and prudent police department under the circumstances" in attempting to identify Angel's remains and what damages Vasquez suffered, if any, from any alleged breach of that duty.

¶57 I join the majority's opinion as to all other issues addressed.

_____
PETER J. ECKERSTROM, Judge